THE ÆTNA INSURANCE COMPANY vs. THE NORTH-WESTERN
IRON COMPANY.

MARINE INSURANCE : *Presumption as to power of agent : Parol contract : Ratification by receipt of premium : Evidence as to usual mode of business.*

1. One acting as sole agent for an insurance company in Milwaukee can only be presumed to have authority to do such business as such agents ordinarily do.
2. The ordinary mode of making marine insurance is by *written* policy; and it must be presumed that the general agent of plaintiff in Milwaukee had a right to issue such policies, and perhaps to make parol agreements to issue them, but not that they had authority to insure by parol.
3. The declarations of the agent on entering into a parol contract of marine insurance and receiving money as premium thereon, that it was not customary to issue policies in such cases, did not bind the company, nor prove the agent's authority to insure by parol.
4. The fact that the company received from its Milwaukee agent and retained the money paid as premium on said unauthorized contract, did not constitute a ratification, unless the company knew on what account the money was paid, and the terms of the contract on which it was received; and proof of such retention did not authorize an instruction to the jury to find for the plaintiff.

5. Where it was not clear from the evidence of the plaintiff below (defendant in error), whether the agent of the insurance company and said plaintiff entered into a parol agreement of insurance as alleged in the complaint, or into a parol agreement for the issue of a written policy, the court should have admitted evidence offered by the insurance company to show that it is the usual course of business of marine insurance companies, through their agents in Milwaukee, to receive oral propositions for insurance, and that when they are accepted, the transaction is recorded in the company's books as an agreement for an insurance upon the terms of the policies in use by the company—the policy to issue at any time on request; and that the parties contracted in this case with reference to this custom.

ERROR to the Circuit Court for *Milwaukee* County.

The action below was brought by the *Northwestern Iron Company* against the *Ætna Insurance Company*, of Connecticut, on an alleged policy of marine insurance upon pig iron, from Milwaukee to Cleveland, upon Lakes Michigan and Erie and the navigable waters connecting them. It is alleged that, in consequence of the vessel on which the shipment was made having struck upon rocks in Lake Erie, it became necessary to turn her into the harbor of Cleveland, and to lighten her of a portion of the cargo; and that in so doing some seventy tons of plaintiff's iron were jettisoned. The answer denies that the agent of the *Insurance Company* at Milwaukee, by whom the policy was issued, was authorized to make it, and denies that the company ever made such contract.

Mr. May, president of the *Iron Company*, testified that in 1865, Messrs. Whaling & Belden were doing business as sole agents of the *Insurance Company* in Milwaukee; that in conversation with Mr. Belden he made an agreement as follows: "I was to ship four hundred tons of iron, one hundred tons each month during June, July, August and September. I stated to him how it was to be shipped, the quantity each month, and the value; and he gave me the figures and rate at which he would insure, which I accepted. I shipped about one hundred tons in June, and the same in July; and the shipment about which this suit is brought, was for August. At

the time I gave him notice of the first shipment, I asked Mr. Belden if I was to have a policy. He said, No; it was not customary to give policies upon such insurances; and I think he entered upon a book which they kept in their office, a memorandum of the insurance; and that, he remarked, was sufficient. I made no application in writing, and took no policy in writing. The iron belonged to the *N. W. Iron Company.*" The witness further testified that he notified Belden of the shipment in August, and also of the loss; that Belden said they would adjust the loss and pay it; that afterwards Belden sent to his (witness's) office and collected the premium for insurance on the iron so shipped in August. The loss, and the circumstances under which it occurred, were then proven. All this evidence was objected to by the *Insurance Company,* on the ground that no proof had been made of any power in its agents at Milwaukee to enter into parol contracts of marine insurance; but the objection was overruled. A motion for a nonsuit was denied.

The *Insurance Company* offered in evidence a duly certified copy of its charter, with its amendments, including the following, enacted in 1839: "That the *Ætna Insurance Company* be, and they are hereby, fully authorized and empowered to issue policies against the hazards of inland navigation and transportation; and said policies, when duly executed by the proper officers of said company, shall be, to all intents and purposes, binding upon said company, in the same manner as though the power to issue the same had been granted by their original charter." This was ruled out as immaterial. The commission of Whaling & Belden as agents of the *Insurance Company* was put in evidence; and it gave them power to "receive proposals" for marine insurance; and to make insurance on property "by policies of said *Ætna Insurance Company,* countersigned" by said agents, "or to renew the same, grant assent to assignments or transfers, and in all manner at-

tend to the business and duties of said agency, under the instructions of the company." Mr. Whaling testified that they had no other authority from said company than that contained in said commission. On cross-examination, he testified that the premium received from the *Iron Company* for insurance of the iron in question, was transmitted to Mr. Dorr, the general agent at Buffalo, and was never returned, Mr. Belden testified that, in the early part of 1865, he told Mr. May, after some previous conversation, that they "would take his iron to Cleveland at eighteen cents on the hundred dollars;" and that May "was satisfied with this, and said they could have the insurance." "It was understood that Mr. May was to report from time to time when he shipped the iron, and the name of the vessel, and the number of tons of each shipment, the value of the iron being understood to be $40 per ton. I took the insurance from Mr. May the same as I would have taken the insurance of any property from any other person." The insurance company then offered to prove by Whaling and Belden and others, that "the usual course of business of marine insurance companies, through their agents in Milwaukee, was to receive oral propositions for insurance ; that when these were accepted, the transaction was entered in the company's books as an agreement between the parties for insurance, upon the terms and conditions of the policies in use by the company—a policy to issue at any time upon request; and that the parties contracted in like manner in the present instance ;" but this evidence was rejected.

The jury were instructed to find a verdict in favor of the *Iron Company* for the amount claimed. Verdict and judgment accordingly; and the *Insurance Company* sued out a writ of error.

*Emmons & Van Dyke*, for plaintiff in error, conceded that a parol agreement to insure is good, and under it the insurer may be compelled to execute a policy, but contended that by all the authorities in this country, there can be no recovery on a parol

contract of insurance; citing, 1 Duer on Ins., 60; 1 Arnould on Ins., 16; Phillips on Ins., 8; *Smith v. Odlin*, 4 Yeates, 468; *Hamilton v. Lycoming Ins. Co.*, 5 Barr, 344; *Delaware Ins. Co. v. Hogan*, 2 Wash. C. C., 4; *Cockerill v. Cin. Mut. Ins. Co.*, 16 Ohio, 148; *Palm v. Medina Ins. Co.*, 20 id., 529; *Perkins v. Washington Ins. Co.*, 4 Cow., 645; *Tayloe v. Merchants' F. Ins. Co.*, 9 How., 390; *Union Mut. Ins. Co. v. Com. Mut. Ins. Co.*, 2 Curtis, 524, and 19 How., 318; *Constant v. Allegheny Ins. Co.*, 3 Wallace, Jr. (1 Am. Law Reg., N. S., 116); *Spitzen v. St. Mark's Ins. Co.*, opinion of Slosson, J., 6 Duer, 14; *Lightbody v. N. A. Ins. Co.*, 23 Wend., 18, opinion of Bronson, J.; *Carpenter v. Mutual Safety Ins. Co.*, 4 Sandf. Ch., 408; *Rockwell v. Hartford Ins. Co.*, 4 Abb., 179. 2. The charter of the plaintiff in error provides that its policies shall be in writing or print, signed by the president, &c. The intention clearly is, that the *contract of insurance* shall be made manifest by written evidence. Many of the cases before cited expressly hold that where the law provides that the corporation may contract in a particular mode, that mode must be followed. 1 Duer, 46; *Head v. Prov. Ins. Co.*, 2 Cranch, 150. 3. Even if an oral contract of insurance made directly with the executive officers or directors of the company would have been valid, the agents in this case had no authority to make such a contract. 4. The evidence offered to prove that the parties contracted with reference to the prevailing usage in Milwaukee, and that their parol contract had reference to the printed policies of the company, should have been admitted.

*Butler & Cottrill*, for defendant in error, contended that a parol contract of insurance is valid, citing 1 Parsons on Merc. Law, 403; 2 Parsons on Mar. Law, 19, 21, 22, and cases there cited; *McCulloch v. Eagle Ins. Co.*, 1 Pick., 279; *First Baptist Church v. Brooklyn F. Ins. Co.*, 19 N. Y., 309; *Sheldon v. Conn. Mut. Life Ins. Co.*, 25 Conn., 218; *Smith v. Odlin*, 4 Yeates, 468; *Hamilton v. Lycoming Mut. Ins. Co.*, 5 Pa., 339; *Benjamin*

*v. Sar. Co. Ins. Co.,* 17 N. Y., 415 ; *Kennebec Co. v. Augusta Ins. Co.,* 6 Gray, 204 ; 22 Barb., 527 ; 25 Conn., 207 ; 26 Me., 18 ; 28 id., 51 ; 5 La. Ann., 697 ; 2 Parsons on Con. (5th ed.), 350. 2. If it be said that we should have brought our action to enforce a specific performance of an agreement to deliver a policy, and then in the same suit have proven and taken judgment for our loss, as was done in *Tayloe v. Merchants'. Ins. Co.,* 9 How. (U. S.), 390, and *Com. Mut. Marine Ins. Co. v. Union Mut. Ins. Co.,* 19 id., 318, we answer, (1.) The contract proved was one *to insure,* and not to issue a policy. (2.) Under our practice we may have such relief in the action as the facts proved entitle us to. *Trull v. Granger,* 4 Seld., 119 ; 18 Barb., 79 ; *Bunten v. Orient Mut. Ins. Co.,* 8 Bosw., 448 ; *Kelley v. Com. Ins. Co.,* 10 id., 82. 3. The charter of the plaintiff in error does not limit its power to the issue of written policies. *Com. Mut. Marine Ins. Co. v. Union Mut. Ins. Co.,* 19 How., 321. 4. Plaintiff in error received the premium, has appropriated it to its own use, and has never offered to return it; and is therefore estopped to deny that its agents had power to make the contract. *Frost v. Saratoga Mut. Ins. Co.,* 5 Denio, 154; *Cumberland Valley Mut. Pro. Co. v. Mitchell,* 48 Pa. St., 374; *Hoxie v. Home Ins. Co.,* 32 Conn., 21 ; *Farmers' & Millers' Bank v. R. R. Co.,* 17 Wis., 372.

Downer, J. 1. Was there any evidence (excluding that on the part of the defendant below) that the agents of the plaintiff in error had authority to make a parol contract of marine insurance ? What authority are they presumed to have when they are proved to be the sole insurance agents of the company at Milwaukee ? Of course, authority to do such business as such agents ordinarily do, the corporation of which they are agents being incorporated, as is admitted by the pleadings, by the legislature of the state of Connecticut. In this case the question whether a parol contract of marine insurance is valid, was argued at

great length by the counsel for the respective parties ; and the authorities by them cited show that the ordinary mode of such insurance is by written policies ; and the counsel of each party conceded this to be so.   We might perhaps take judicial notice of the ordinary mode of insurance.   If, then, the ordinary mode is by written policies, the presumption is that the agents at Milwaukee had a right to issue such policies, and to make, perhaps, a parol agreement to issue.   But this, it appears to us, is the extent of the authority or presumption of authority The declaration of Belden to May, that it was not customary to give policies upon such insurances, is not sufficient to prove the authority of the agents to insure by parol.   If it were, an agent might, by his own declaration, without the knowledge of his principal, increase his authority as to third persons to any extent.   We are of opinion that the evidence (excluding that on the part of the defendant below) is not sufficient to prove that the agents had any authority to insure except in the ordinary mode, by issuing written policies.

2.  It was proved on the part of the defendant below, that the money received for insurance on the iron was by the agents at Milwaukee transmitted to Mr. Dorr, the general agent of the company at Buffalo.   And the receipt of the money is admitted in the answer; but the defendant denies that it was the premium for insurance under the contract set out in the complaint.   Is this sufficient evidence of the ratification of the contract to authorize the positive instruction to find for the plaintiff?   The ratification by a principal of the unauthorized act of his agent, to be binding, must be made with a full knowledge of the material facts.   The receipt and retaining of the money by the company would not ratify the unauthorized contract, unless the company knew on what account the money was paid, and the terms of the contract on which it was re-received.   *Steam Navigation Co. v. Dandridge*, 8 Gill & Johns., 248.   If the evidence tended to prove those facts, and was

sufficient to sustain a verdict of the jury finding them (of which we have some doubt), then the county court should have submitted the case to the jury with instruction that if they found these facts, their verdict should be for the plaintiff. It erred in giving the positive instruction to find for the plaintiff.

3. The defendant below offered to prove that the usual course of business of marine insurance companies, through their agents in Milwaukee, is to receive propositions for insurance by parol or verbally; and that when accepted, the transaction is entered and recorded in the books of the company as an agreement between the parties for insurance upon the terms and conditions of the policies in use by the companies—a policy to issue at any time upon request; and that the parties contracted in like manner in the present instance—the contract having reference to the printed policies of the company. The testimony so offered the court held inadmissible.

Did the court err? The testimony of Mr. May as to the conversation between him and Mr. Belden preceding the first shipment of iron tends to prove that he expected his company to be insured in the ordinary mode, by a written policy. And at the time he gave notice of the first shipment, he says he asked Mr. Belden if he was to have a policy. There is reason, therefore, to believe that up to that point of time he expected a policy to issue in the ordinary form. And whether the parties made an agreement for issuing such a policy, or made a parol agreement of insurance, is not entirely certain from the evidence of the plaintiff below. The testimony offered tended to prove the understanding of the parties, and that no such contract as that alleged was made; and it appears to us it should have been received.

*By the Court.*—Judgment reversed.