MICKE, Respondent, v. JACK WALTERS & SONS CORPORATION, Appellant.

*No. 4 (1974). Submitted under sec. (Rule) 251.54 October 2, 1975.—Decided October 28, 1975.*
(Also reported in 234 N. W. 2d 347.)

For the appellant the cause was submitted on the briefs of *T. Michael Schober* and *Schober & Radtke,* all of New Berlin.

For the respondent the cause was submitted on the brief of *Jeffrey D. Riester* and *McCarty, Curry, Wydeven, Asmus & Peeters,* all of Kaukauna.

ROBERT W. HANSEN, J. This case concerns an alleged breach of an oral employment contract. Prior to trial certain facts were stipulated.[1] Both parties agree to the payment of commissions on an "over" and "short" adjustment basis.[2] What the parties disagree about is

[1] The parties stipulated: (1) Plaintiff began employment with the defendant corporation on June 5, 1972, and ended employment on August 31, 1972; (2) plaintiff was to receive $500 per month base pay, plus one percent commission on all orders secured for the defendant to be paid when a down payment was received and another one percent commission to be paid when the job was done and paid for; (3) plaintiff brought in orders relating to five separate jobs—Bula at $23,100, Baginski at $5,160, Nienow at $6,520, Dumask at $3,145, and Kaks at $100; (4) total of these jobs was $38,025 and commissions would be $760.50; (5) plaintiff has received an advance commission on the Bula job of $232, leaving his claim at $528.50; and (6) at the time of trial all of the jobs had been finished and defendant corporation had received payment for those jobs.

[2] Explained by defendant's sales manager, James Walters, as being: ". . . it says if you take your cost of materials and your cost of labor, regardless of what they are, because that way it covers the whole basis no matter what the salesman sells or gives away, we then add our overhead and profit to it, and that is the check up when done . . . and it is a very foolproof system. . . ."

what was to happen when a salesman terminated his employment with the corporation. It is the defendant corporation's position that company policy is and the oral agreement was that ". . . after termination a salesman is not entitled to a commission unless the job is completed and paid for prior to the time. that he leaves the employment of the company."[3] Plaintiff claims that he was not told of such company policy until shortly before he terminated his employment, and one former employee of the defendant corporation testified that he had not been told of such policy when he was hired by the same employment manager for defendant corporation.

As to the issue of payment of commission upon termination, the defendant corporation raises three claims of error in its appeal from the judgment of $528.50 against it. Each of the three claims of error will be dealt with separately.

(1) *Did the trial court err in admitting testimony of two former employees to show a policy or pattern of action by defendant corporation?* As to one employee, a Donald Moldenhauer, the court excluded testimony relating to the year 1969 as too remote, but admitted testimony concerning company policy during the year 1972. As to the second former employee, a William Neis, the trial court allowed testimony as to discussions with the employer as to the effect of a salesman terminating or resigning when commissions had not been received. In an early case, where the exact terms of an oral contract were at issue, our court held testimony as to usual course of business of marine insurance companies to be admissible as ". . . tend[ing] to prove the understanding of the parties . . . ."[4] Also, long ago, our court upheld

---

[3] Direct examination of Vincent Lamers, manager of the Wittenberg office of defendant.

[4] *Aetna Ins. Co. v. Northwestern Iron Co.* (1867), 21 Wis. 464 (*458), 471 (*465).

the allowing of cross-examination of a grain elevator manager as to former transactions with the plaintiff and others, ". . . to support an inference that the present transaction was a storing of grain in accordance with the general habit."[5] In a more recent case, our court barred proof of custom as to furnishing of a stallion for service to others since the stallion owner ". . . was at liberty, if he chose, to make a different agreement with several persons, and any particular agreement so made would be entirely immaterial and irrelevant as bearing upon a contract made with another."[6] More recently, in an action to recover payment for airline tickets, our court held admissible evidence of a course of conduct between plaintiff and defendant, holding ". . . local custom or usage or an individual course of dealing between two parties may be proven as having probative value to show the intention of the parties to a contract . . . ."[7] Cited as authority was 4 Jones, *Evidence* (5th ed. 1958), p. 1932, rules 49[8] and 50[9] of the Uniform Rules of Evi-

[5] *Sullivan v. Mauston Milling Co.* (1904), 123 Wis. 360, 362, 101 N. W. 679.

[6] *Steppe v. Farber* (1931), 205 Wis. 80, 84, 236 N. W. 530. *See also: Markgraf v. Columbia Bank of Lodi* (1931), 203 Wis. 429, 444, 233 N. W. 782, our court holding: "The mere fact that the bank had accepted bonds from other customers for safekeeping was not proof of the claim that the bank had received bonds from the plaintiff for safekeeping."

[7] *Karp v. Coolview of Wisconsin, Inc.* (1964), 25 Wis. 2d 299, 303, 130 N. W. 2d 790.

[8] "Rule 49. *Habit or Custom to Prove Specific Behavior.* Evidence of habit or custom is relevant to an issue of behavior on a specified occasion, but is admissible on that issue only as tending to prove that the behavior on such occasion conformed to the habit or custom."

[9] "Rule 50. *Opinion and Specific Instances of Behavior to Prove Habit or Custom.* Testimony in the form of opinion is admissible on the issue of habit or custom. Evidence of specific instances of behavior is admissible to prove habit or custom if the evidence is of a sufficient number of such instances to warrant a finding of such habit or custom."

dence. Under these rules, now codified by statute,[10] we hold that the evidence of corporate habit or routine practice was properly admitted as relevant and material on the issue in dispute as to the nature of the oral agreement of the parties. In the case before us, the defendant's manager of the Wittenberg office, who interviewed the plaintiff, testified that his procedure ". . . with all the men I hire" was to explain the policy of nonentitlement to commissions upon termination. This testimony, offered by defendant, is not consistent with the position that the company practice as to informing new employees about company policies has no relevancy to the company's oral agreement reached with a particular employee.[11]

(2) *Did the trial court err in not instructing the jury for what purposes the evidence of the two former employees was being admitted?* There is no evidence or indication in this record that the defendant corporation requested such specific instruction when the case was submitted to the jury. Therefore error cannot now be predicated upon the omission. As this court has held: "Where instructions are incomplete, and do not cover a point that ought to be covered, this court will not reverse unless a timely request for appropriate instructions has been made to the trial court."[12]

---

[10] *See:* Sec. 904.06, Stats., which according to Judicial Council Committee's Note, with which we concur, this section of the statute, except for items not here relevant, is not a change in Wisconsin law. As stated by the committee: "Habit or routine practice evidence is admissible in Wisconsin."

[11] *See:* McCormick, *Evidence* (2d ed. 1972), p. 470, sec. 198, stating: "Contracts of a party with third persons may show the party's customary practice and course of dealing and thus be highly probative as bearing on the terms of his present agreement." *See also: Sullivan v. Mauston Milling Co., supra,* footnote 5, at page 362.

[12] *Grinley v. Eau Galle* (1956), 274 Wis. 177, 179, 79 N. W. 2d 797.

(3) *Did the trial court err in failing to grant defendant's motion for judgment notwithstanding the verdict on the ground that plaintiff provided insufficient evidence to prevail on the issue of damages?* [13] Here the reference is to the "over" and "short" aspect of the agreement, the defendant corporation noting that the testimony of its sales manager, one James Walters, stands uncontradicted to the effect that three of the five jobs brought in by the plaintiff were "short." [14] However, the overall issue is not whether three jobs were "short." That issue is whether the defendant corporation owed the plaintiff money when *all* the jobs were considered. This is so because overages can offset shortages under the arrangement, thus enabling salesmen to receive their full commission. Here the testimony of Walters for the defendant was that one job was short $35, another short $117, and the third short $1,188. However, the same defendant's witness testified that a fourth job, by far the biggest of the five, was "over." No other specific evidence was offered by defendant corporation regarding overages and shortages. [15] The plaintiff denied that any of his jobs were short, and also testified that he had

[13] The parties to this suit have stipulated that if plaintiff is entitled to a commission ". . . the commission would be $760.50. Mr. Micke has received an advance commission on the Bula job of $232, leaving his claim at this point at $528.50."

[14] *See: Thiel v. Damrau* (1954), 268 Wis. 76, 85, 66 N. W. 2d 747, our court there holding: "Positive uncontradicted testimony as to the existence of some fact, or the happening of some event, cannot be disregarded by a court or jury in the absence of something in the case which discredits the same or renders it against the reasonable probabilities."

[15] *See: State v. McFarren* (1974), 62 Wis. 2d 492, 500, 215 N. W. 2d 459, our court quoting from McCormick, *Evidence* (2d ed. 1972), p. 787, sec. 337: "A doctrine often repeated by the courts is that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue."

an overage built up, and that no one for the employer corporation had ever told him his prices were inadequate. He also testified that all prices on all his jobs were ". . . within the guidelines of the prices set in the books and discounts allowed." As to commissions due this plaintiff, we find here conflicts in the evidence to be determined by the fact finder, here the jury.[16] Given this (and other testimony), the jury here found that there was not sufficient evidence in the record to prove that the total account of the plaintiff was a "net short" account. The trial court upheld this finding, and we agree that the issue was for the jury to resolve. As to the down payment on one of the five jobs not coming in until after termination (the Dumask job), with the contracts signed before such date and the plaintiff having done all that he was to do in getting the job, we also hold that here the finder of fact—the jury—was entitled to find entitlement of the plaintiff to the commission involved under the agreement of the parties. As to the principal and ultimate fact to be determined—whether the defendant corporation owed the plaintiff the commissions on each and all of the five jobs procured by the plaintiff—we hold that there was here sufficient evidence to support the verdict of the jury and, in turn, the judgment of the trial court.

*By the Court.*—Judgment affirmed.

---

[16] *See: State v. Public Service Comm.* (1962), 16 Wis. 2d 231, 238, 114 N. W. 2d 454, our court there holding: "The weight to be given the conflicting testimony was a decision for the trier of the fact (P. S. C.)."