Gloria CHOMICKI, Plaintiff-Respondent,

v.

Kenneth WITTEKIND, Defendant-Appellant.

Court of Appeals

*No. 85–0740. Submitted on briefs October 1, 1985.—Decided December 4, 1985.*
(Also reported in 381 N.W.2d 561.)

For the plaintiff-respondent the cause was submitted on the briefs of *Robert C. Angermeier* of Milwaukee.

For the defendant-appellant the cause was submitted on the briefs of *Anthony J. Palasz* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.   Kenneth Wittekind appeals from a judgment entered on a jury verdict finding that Wittekind's sexual harassment of Gloria Chomicki, and his subsequent termination of her tenancy, was discriminatory conduct prohibited by the state fair housing law, sec. 101.22, Stats. Wittekind asserts trial court error as a matter of law in allowing Chomicki's claim under this statute. He also challenges (1) the admission of testimony from other tenants concerning similar harassment episodes, (2) the sufficiency of the evidence demonstrating Chomicki's economic loss, and (3) the jury instructions on compensatory and punitive damages.

Because sec. 101.22(2)(f), Stats., specifically prohibits a landlord from "engaging in the harassment of a tenant," the trial court properly concluded that Wittekind's conduct was a form of sex-based housing discrimination. Because the testimony of four of Wittekind's female tenants was relevant and highly probative as to his routine practice of demanding sexual favors, the trial court properly admitted this evidence pursuant

to sec. 904.06, Stats. Because credible evidence was introduced to demonstrate Chomicki's incurred expenses, because the jury instruction on punitive damages properly enunciated the clear and convincing evidence standard, and because Chomicki was not obligated to prove all the elements of the common law tort of intentional infliction of emotional distress in order to collect compensatory damages, we affirm both the jury instructions and the damage awards.

The essential facts of this case are as follows. In 1981, Chomicki began renting an apartment from Wittekind on a month-to-month basis. On January 6, 1983, he made explicit sexual advances to her and threatened to raise her rent or evict her if she did not comply. When she refused his advances, he immediately terminated her tenancy. Subsequently, Chomicki brought a private civil action against Wittekind pursuant to sec. 101.22(7), Stats.

At trial, Chomicki testified that Wittekind not only gave her an ultimatum either to have sex with him or to vacate her apartment, but also engaged in further harassment when she refused. First, he gave her notice to vacate. Next, he cursed her over the telephone when he learned she intended to take legal action to prevent the termination of her tenancy. Finally, he roamed through her apartment building at all hours of the night accompanied by his guard dog. Chomicki also introduced evidence from four other women that between 1982 and 1984 Wittekind had made sexual demands to them in a landlord-tenant context. Three of these women were private citizens; the fourth was a government investigator. All had been former tenants or prospective tenants of Wittekind. The jury found for Chomicki and awarded her damages for economic loss

($1,500) and emotional distress ($7,500), as well as punitive damages ($10,000). Wittekind's postverdict motions were denied, judgment was entered, and this appeal followed.

Wittekind first asserts that the trial court erred in applying sec. 101.22, Stats., to Chomicki's claim of sexual harassment since this specific form of discriminatory conduct is only defined and prohibited in the fair employment law, secs. 111.31–111.395, Stats. We do not agree. Interpretation of a statute is a question of law which we review without deference to the trial court. *Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct. App. 1983). Statutes relating to the same subject matter may be considered in construing a statutory provision. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 53 (1981).

■ While a landlord may terminate a month-to-month tenancy for any legitimate reason, or for no reason at all, he or she may not terminate a tenancy for an illegal purpose. *See Dickhut v. Norton,* 45 Wis. 2d 389, 399, 173 N.W.2d 297, 301–02 (1970). It is against the law of this state for any person to discriminate in the rental of housing. Section 101.22(1), Stats. As defined in sec. 101.22(1m), "discrimination" means "to segregate . . . or treat any person or class of persons unequally because of sex . . . ." Specifically, under sec. 101.22(2)(f) it is unlawful for any person to discriminate "[b]y refusing to renew a lease, causing the eviction of a tenant from rental housing or *engaging in the harassment of a tenant."* (Emphasis added.) Although Wittekind protests that "harassment" under sec. 101.22 does not include "sexual harassment," he offers no rea-

son why we should strike this form of harassment from consideration. Under the facts adduced at trial, Wittekind "treated" Chomicki "unequally because of sex" by harassing her to have unwanted sexual relations with him. Other women testified that Wittekind had similarly harassed them, and Wittekind himself admitted that he never made sexual advances to any of his male tenants.

Wittekind claims that even if these facts are accepted as true, his conduct does not fall within the aegis of the fair housing law. He correctly notes that the definition of sexual harassment used by the trial court in instructing the jury was derived from the fair employment law. Section 111.32(13), Stats., provides in part: " 'Sexual harassment' means unwelcome sexual advances, unwelcome physical contact of a sexual nature or unwelcome verbal or physical conduct of a sexual nature." Wittekind asserts that this definition of prohibited conduct applies only to cases alleging discrimination in employment, not to claims alleging discrimination in housing.

This facile argument cannot avoid the fact that both laws are designed to eradicate the effects of bias and prejudice. Their purposes are the same; only their fields of operation differ. Both statutes are intended to be remedial in nature and broad in scope, as the history of the sexual harassment doctrine itself demonstrates. Before this doctrine was codified in our statutes, it was recognized by the administrative agency that has jurisdiction over employment discrimination claims and by our courts. *Hamilton v. DILHR,* 94 Wis. 2d 611, 620 n.4, 288 N.W.2d 857, 861 n.4 (1980). If an employer's sexual harassment of an employee constitutes sex dis-

crimination in the workplace, then a landlord's sexual harassment of a tenant constitutes sex discrimination in the rental market. This is particularly true when a landlord predicates the continuation of a tenancy upon acceptance of sexual demands. Here, the jury found that Wittekind terminated Chomicki's tenancy because she refused to have sex with him. We conclude that such conduct is actionable under sec. 101.22, Stats., and that the trial court's reliance on the doctrine of sexual harassment was both reasonable and proper.

Wittekind next asserts that the trial court erred in admitting testimony from four women that Wittekind had made similar sexual advances to them in a landlord-tenant context. The standard of review of a trial court's ruling admitting evidence is whether the trial court exercised its discretion in accordance with accepted legal standards and the facts of record. *In re Paternity of T.L.S.,* 125 Wis. 2d 399, 401, 373 N.W.2d 55, 56 (Ct.App. 1985).

When Wittekind moved *in limine* to exclude the four women's testimony, the trial court denied the motion, stating that Chomicki could "bring in the witnesses as to show a plan or business plan." *See* sec. 904.04(2), Stats. (evidence of other crimes, wrongs or acts is admissible to prove the existence of a plan). At trial, however, the court clarified its rationale for admitting the testimony when it rejected Chomicki's proposed jury instruction based on sec. 904.04(2) and, instead, utilized an instruction based on sec. 904.06, Stats.[1] Specifically, the trial court directed the jury:

---

[1] Section 904.06, Stats., reads in pertinent part:

(1) Admissibility. . . . [E]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not

You may consider the habits or routine practices of the defendant as they pertain to seeking sexual favors from tenants or prospective tenants other than the plaintiff in determining whether the defendant sought sexual favors from the plaintiff in this case. Habit or routine practice may be proved by the testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

Wittekind argues that testimony concerning four "isolated" incidents over a two-year period cannot be termed evidence of a habit or routine practice. We disagree. Section 904.06(2), Stats., does not require a minimum number of "specific instances of conduct" to establish a routine practice or habit. Thus, in *Micke v. Jack Walters & Sons Corp.,* 70 Wis. 2d 388, 390–92, 234 N.W.2d 347, 348–49 (1975), our supreme court affirmed a trial court's decision to use this evidentiary rule to admit the testimony of two former employees as to company policy. Similarly, in *Lobermeier v. General Telephone Company,* 119 Wis. 2d 129, 150–51, 349 N.W.2d 466, 476–77 (1984), evidence of ten prior incidents was deemed admissible. The key issue is not how many incidents are testified to, but how relevant and probative are they to the case at bar. *See Micke,* 70 Wis.

---

and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

(2)   Method of proof. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

2d at 392, 234 N.W.2d at 349; *Lobermeier,* 119 Wis. 2d at 151, 349 N.W.2d at 477. Here, the four witnesses testified to conduct by Wittekind that was factually similar to the circumstances surrounding Chomicki's complaint. Their testimony, if believed by the jury, was both relevant and highly probative. It was, therefore, properly admitted pursuant to sec. 904.06. [2]

We now turn to the issue of damages. Wittekind asserts various grounds to challenge the jury awards for economic loss ($1,500), emotional distress ($7,500) and punitive damages ($10,000). We will address these items *seriatim.*

█

First, Wittekind contends that Chomicki failed to prove that she incurred expenses as a result of the abrupt termination of her tenancy. The general rule for appellate review of damage awards, as for other factual questions, is that any credible evidence of the damage claimed is sufficient to sustain the jury's award. *Lundin v. Shimanski,* 124 Wis. 2d 175, 195, 368 N.W.2d 676, 686 (1985) (citations omitted). Chomicki presented both utility bills and rent receipts from her new apartment to demonstrate increased costs in the months after Wittekind terminated her tenancy. These items,

---

[2] Wittekind's claim that the trial court erred in failing to give a "cautionary instruction" on the relevance of character evidence is not considered on appeal because Wittekind failed to request the instruction and because the trial court clearly relied on sec. 904.06, Stats., in determining admissibility.

We also reject Wittekind's attempt to distinguish "habit of a person" from "routine practice of an organization," *see* sec. 904.06(1), Stats. Wittekind was a landlord with numerous properties and rental units; in brief, he was doing business as a lessor of rental housing.

plus uncontroverted evidence that Wittekind charged her $270 per month as rent, are sufficiently credible for the jury to reasonably estimate Chomicki's incurred expenses. Thus, we affirm this award.

■

Wittekind next claims the trial court gave an erroneous instruction on punitive damages. Our review of this instruction indicates that it is properly patterned on Wis J I—Civil 1707. The trial court advised the jury that there must be clear and convincing evidence to warrant the assessment of punitive damages, and Wittekind cannot advise us of any specific defect in the instruction that mandates reversal. We therefore affirm.

Finally, Wittekind alleges that the trial court improperly instructed the jury on the evidence necessary to award Chomicki compensatory damages for emotional distress. The trial court directed the jury as follows:

If you should find that the plaintiff is entitled to a verdict, you will award her such sum as actual damages as you find will compensate her reasonably for the loss of her civil rights and any mental anguish, humiliation, anguish or emotional distress already suffered by her or reasonably certain to be suffered by her and proximately caused by the defendant.

Although Wittekind clearly waived his objection to this instruction at trial, *see* sec. 805.13(3), Stats., we may still consider whether this instruction mandates reversal. The test on review is whether the error is so plain or fundamental as to affect Wittekind's substantial rights. *State v. Moriarty,* 107 Wis. 2d 622, 630, 321 N.W.2d 324, 329 (Ct. App. 1982); sec. 805.18(2), Stats.

Wittekind argues that Chomicki's recovery is controlled by the rules laid down in *Alsteen v. Gehl,* 21

Wis. 2d 349, 359–61, 124 N.W.2d 312, 318 (1963), concerning the common law tort of intentional infliction of emotional distress.[3] Certainly, under the *Alsteen* criteria, Chomicki would not be able to recover because she introduced no evidence to show that she suffered an "extreme disabling emotional response" to Wittekind's harassment. *Id.* at 360, 124 N.W.2d at 318. Chomicki, however, did not bring a common law tort claim, but a private civil action specifically authorized by statute. Section 101.22(7)(a), Stats., provides: "A person alleging a violation of this section may bring a civil action for appropriate injunctive relief, for damages including punitive damages, and for court costs and reasonable attorney fees in the case of a prevailing plaintiff."

In *Yanta v. Montgomery Ward & Co.*, 66 Wis. 2d 53, 63, 224 N.W.2d 389, 394 (1974), our supreme court limited damages in a sex-based employment discrimination claim to recovery of lost wages. The *Yanta* court reiterated that a defendant who violates a statute should be required to compensate the plaintiff for causing the kind of harm the statute was designed to prevent. *Id.* at 62, 224 N.W.2d at 394. After reviewing the legislative declaration of policy in sec. 111.31, Stats., the supreme court concluded that because the fair employment law expressly refers to harm from loss of wages but does not mention emotional harm or attorney's fees, damages in a private action do not include

---

[3] To recover, the plaintiff must establish that the purpose of the conduct was to cause emotional distress, that the conduct was extreme and outrageous, that it was the cause in fact of the plaintiff's injury, and that the plaintiff suffered an extreme disabling emotional response. *Alsteen v. Gehl,* 21 Wis. 2d 349, 359–61, 124 N.W.2d 312, 318 (1963).

compensation for the latter two items.[4] *Id.* at 62–63, 224 N.W.2d at 394.

In contrast, the stated intent of the fair housing law is much broader. In sec. 101.22(1), Stats., the legislature states that its intent is to render housing discrimination unlawful and to guarantee equal opportunity for housing, and concludes: "This section shall be deemed an exercise of the police powers of the state for the protection of the welfare, health, peace, *dignity* and *human rights* of the people of this state." (Emphasis added.) It is clear from this language that the kinds of harm the statute is designed to prevent include not only denial of housing but also denial of basic human rights and personal dignity. Thus, the trial court could reasonably infer that a landlord's sexual harassment of a tenant injures that tenant's dignity and civil rights, and that such injuries are compensable.

Additionally, we note that federal courts have uniformly permitted recovery for humiliation and mental anguish in private civil actions brought under the Fair Housing Act of 1968, 42 U.S.C. § 3612, and the Civil Rights Act of 1866, 42 U.S.C. § 1982. *See Phillips v. Hunter Trails Community Association,* 685 F.2d 184, 190–91 (7th Cir. 1982) ($25,000 compensatory award for humiliation and embarrassment reduced to $10,000 and approved along with $50,000 in punitive damages); *see also Davis v. Mansards,* 597 F. Supp. 334, 346–47 (N.D.

---

[4] In *Watkins v. LIRC,* 117 Wis. 2d 753, 765, 345 N.W.2d 482, 488 (1984), the supreme court clarified *Yanta* and held that DILHR was authorized to award reasonable attorney's fees to a prevailing complainant in an administrative action brought under the fair employment law. Ironically, a litigant in a private action still has no such remedy.

Ind. 1984) ($10,000 compensatory damages for emotional distress and loss of civil rights, plus $1,000 in punitive damages); *Parker v. Shonfeld,* 409 F. Supp. 876, 879, 881 (N.D. Cal. 1976) ($10,000 compensatory award for humiliation and embarrassment, along with $10,000 in punitive damages). Taking into account these persuasive federal decisions, the remedial nature of our state fair housing law, and the specific legislative intent cited in sec. 101.22(1), Stats., to protect the "dignity and human rights" of our citizenry, we conclude the trial court did not err in its instruction to the jury on compensatory damages.

Wittekind next argues that even if compensatory damages are available for sexual harassment, Chomicki still failed to introduce sufficient evidence to justify a $7,500 award. Wittekind properly observes that in discrimination cases federal courts require a plaintiff to prove the existence and magnitude of subjective injuries with competent evidence. *Busche v. Burkee,* 649 F.2d 509, 519 (7th Cir.), *cert. denied,* 454 U.S. 897 (1981) (quoting *Carey v. Piphus,* 435 U.S. 247, 264 n.20 (1978)). We note, however, that federal case law provides that competent evidence of emotional distress may be established by plaintiff's testimony alone. *See Crawford v. Garnier,* 719 F.2d 1317, 1324 (7th Cir. 1983) ($5,000 award for "emotional pain and suffering" affirmed since plaintiff's testimony was "sufficient proof of his injury"). Humiliation may also be inferred from the circumstances. *See Seaton v. Sky Realty Co.,* 491 F.2d 634, 636 (7th Cir. 1974) (humiliation reasonably inferred in a housing discrimination case since plaintiff "was subjected to a racial indignity which is one of the relics of slavery").

In the instant case, Chomicki testified that she was "devastated" and "distraught" after Wittekind informed her that her tenancy would be terminated if she did not agree to have sex with him, that she spent the last month of her tenancy in fear of Wittekind, that she was forced to relocate herself and her young children during winter, that she had nightmares about Wittekind and his patrol dog after she moved, and that she consulted a psychologist as the result of this experience. Wittekind introduced testimony from a psychologist who examined Chomicki eighteen months after the incident. This psychologist concluded that Chomicki had long standing emotional problems that predated her contact with Wittekind, and that she tended to "over-react emotionally to adverse situations."

In reviewing a damages award granted by a jury, this court may not substitute its judgment for that of the jury but, rather, must determine whether the award is within reasonable limits. *Badger Bearing, Inc. v. Drives & Bearings, Inc.,* 111 Wis. 2d 659, 670, 331 N.W.2d 847, 854 (Ct. App. 1983). In our review of the record, we must view the evidence in the light most favorable to the damages award. *Id.* The jury and the trial court had the opportunity to hear and observe Chomicki and assess her credibility. Also, her emotional distress could be reasonably inferred from the fact that she had been treated as a sexual chattel by her landlord and forced to relocate in the middle of winter along with her young children. Thus, both her testimony and the circumstances surrounding the incident reasonably sustain an award of $7,500. As noted above, this award is not excessive in light of compensa-

tory damage assessments in comparable federal cases in the Seventh Circuit.

We therefore affirm the judgment in all respects.

*By the Court.*—Judgment affirmed.