Jacqueline STEINBERG and Michael Steinberg, Plaintiffs-Appellants,†

v.

Senen ARCILLA, M.D., Wisconsin Health Care Liability Insurance Plan, a domestic corporation, and Wisconsin Patients Compensation Fund, a statutory entity, Defendants-Respondents.

Court of Appeals

*No. 94–1572. Submitted on briefs May 2, 1995.—Decided May 23, 1995.*

(Also reported in 535 N.W.2d 444.)

†Petition to review filed.

760

761

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David M. Skoglind* of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Christopher P.*

■■■■■■■■

■■■■■

*Riordan* of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. Jacqueline and Michael Steinberg brought this lawsuit against Senen Arcilla, M.D., to recover for injuries they contend that Jacqueline Steinberg suffered during an operation at which Dr. Arcilla was the anesthesiologist. The jury found that Dr. Arcilla was not negligent. The Steinbergs appeal from the judgment entered upon the verdict. They assert the following claims of trial-court error: first, that the trial court improperly admitted as evidence under RULE 904.06, STATS., Dr. Arcilla's testimony about his usual practice in positioning the arms of patients under his anesthesiological care during surgery; second, that the trial court did not change the jury's answer to the question of whether Dr. Arcilla was negligent from "no" to "yes"; third, that the trial court instructed the jury in accordance with the pattern jury instruction, WIS J I—CIVIL 1023. We affirm.

## I.

In April of 1987, Mrs. Steinberg had emergency surgery for a ruptured tubal pregnancy. Dr. Arcilla was the anesthesiologist. Following the surgery, Mrs. Steinberg suffered from pain and numbness in her arms. She claims permanent injury to her ulnar nerve, a nerve that runs through the forearm. STEADMAN'S MEDICAL DICTIONARY 1709 (21st ed. 1966). The Steinbergs' theory was that Dr. Arcilla failed to position Mrs. Steinberg's arms properly during the operation, and they introduced substantial evidence

763

that injury to the ulnar nerve can result if a patient's arms are not positioned properly during surgery.

There was no direct evidence as to how Mrs. Steinberg's arms were positioned during her surgery. Consequently, in their attempt to prove that Dr. Arcilla was negligent, the Steinbergs relied on circumstantial evidence as well as the doctrine of *res ipsa loquitur*, which permits a fact-finder to infer that negligence caused injuries when the following three conditions are satisfied:

> "(a) either a layman is able to determine as a matter of common knowledge or an expert testifies that the result which occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event."

*Fiumefreddo v. McLean*, 174 Wis. 2d 10, 17, 496 N.W.2d 226, 228 (Ct. App. 1993) (citation omitted). The Steinbergs introduced expert testimony that, in the words of one of their witnesses, "in the absence of negligence an ulnar nerve injury does not occur." The witness also testified that the positioning of a patient's arms during surgery is under the anesthesiologist's control, and that, in the witness's opinion, Dr. Arcilla was negligent.

Dr. Arcilla testified that he did not remember anything about Mrs. Steinberg's surgery, including how he positioned her arms. He did, however, testify about his normal practice, and a defense expert told the jury that

Dr. Arcilla was not negligent if he followed that practice in his care of Mrs. Steinberg. The defense also introduced expert testimony, including testimony by the Steinbergs' experts, that there may have been causes of Mrs. Steinberg's ulnar nerve injury other than Dr. Arcilla's failure to position her arms properly during surgery. As noted, the jury found that Dr. Arcilla was not negligent. We discuss the Steinbergs' claims of trial-court error in turn.

## II.

A. *RULE 904.06, STATS.*

The Steinbergs contend that the trial court erred in receiving Dr. Arcilla's testimony as to how he routinely positions the arms of his patients. RULE 904.06, STATS., provides:

> **Habit; routine practice. (1)** ADMISSIBILITY. Except as provided in s. 972.11(2), evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.
>
> **(2)** METHOD OF PROOF. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

Evidence of a person's habit is relevant because that evidence makes it more probable that the person acted consistent with that habit. *French v. Sorano*, 74 Wis.

2d 460, 466, 247 N.W.2d 182, 185 (1976); *see also* RULE 904.01, STATS. (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). "Habit" evidence, which is admissible, RULE 904.06, must, however, be distinguished from "character" evidence, which is generally not admissible, RULE 904.04(1).[1] The two are often confused. *Hart v. State*, 75 Wis. 2d 371, 392–393 n.9, 249 N.W.2d 810, 819 n.9 (1977); 1 MCCORMICK ON EVIDENCE § 195 at 825 (John W. Strong ed., 4th ed. 1992).

> People sometimes speak of a habit for care, a habit for promptness, or a habit of forgetfulness. They may say that an individual has a bad habit of stealing or lying. Evidence of these "habits" would be identical to the kind of evidence that is the target of the general rule against character evidence. Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or

---

[1] RULE 904.04(1), STATS., provides:

CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;

(b) *Character of victim.* Except as provided in s. 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(c) *Character of witness.* Evidence of the character of a witness, as provided in ss. 906.07, 906.08 and 906.09.

peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation.

1 MCCORMICK ON EVIDENCE § 195 at 825 (footnotes omitted). Thus, evidence that a person regularly looks both ways before she crosses a street would be admissible to prove that she looked both ways before crossing Elm Street on June 15. On the other hand, evidence that a person was safety-conscious and careful would not be admissible to prove that she looked both ways before crossing Elm Street on June 15. The former is evidence of "habit," and is admissible under RULE 904.06; the latter is evidence of "character," and, with exceptions not material here, may not be used to prove that the person acted "in conformity therewith on a particular occasion." *See* RULE 904.04(1).[2] Contrary to the Steinbergs' contention, however, a person's "regular response" need not be " 'semi-automatic' " or " 'virtually unconscious' " (quoting Daniel D. Blinka, *Evidence of Character, Habit, and "Similar Acts" in Wisconsin Civil Litigation*, 73 MARQ. L. REV. 283, 312 (1989)). To the contrary, in *French*, 74 Wis. 2d at 464–466, 247 N.W.2d at 185–186, the hiding of money in a car was held to be "habit" within the scope of RULE 904.06, as was a landlord's sexual harassment of tenants in

[2] "The rationale for admitting evidence of habit and not of character is based mostly on a differentiation of probative value. It is not always, or even often, the case that a person acts in accordance with a character trait. Violent people, for example, do not act violently on every conceivable occasion. In contrast, the specificity and consistency attendant to habit give increased confidence that a person acted in accordance with habit on a specific occasion." 1 STEPHEN A. SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL 467 (6th ed. 1994).

*Chomicki v. Wittekind*, 128 Wis. 2d 188, 195–197, 381 N.W.2d 561, 564–565 (Ct. App. 1985).

A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted); *see also* 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE, ¶ 406[01] at 406—7 to 406—8 (1991) (The precise contours of "how frequently and consistently instances of behavior must be multiplied in order to rise to the status of habit . . . cannot be formulated and, as in other areas of relevancy, admissibility depends on the judge's evaluation of the particular facts of the case."). In Wisconsin, habit "may be proved" "by specific instances of conduct sufficient in number to warrant a finding that the habit existed." RULE 904.06(2), STATS. This is an issue of conditional relevancy under RULE 901.04(2), STATS.[3] *See French*, 74 Wis. 2d at 466, 247 N.W.2d at 185–186 ("Any lack of evidence as to the conduct on a particular occasion is not a question of admissibility, but sufficiency.") (not citing RULE 901.04(2)); *Chomicki*, 128 Wis. 2d at 197, 381 N.W.2d at 565 (testimony about acts alleged to constitute habit, "if believed by the jury," was relevant) (not citing RULE 901.04(2)). As applicable to RULE 904.06, the trial court determines whether a reasonable jury could find that the predicate

---

[3] RULE 901.04(2), STATS., provides:

RELEVANCY CONDITIONED ON FACT. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

evidence necessary to prove habit (either a witness's "opinion" or a sufficient number of "specific instances of conduct," RULE 904.06(2), STATS.) has been established. If so, the trial court instructs the jurors that if they believe the predicate evidence they may, but need not, find that habit has been proved and that the "conduct" at issue "was in conformity with the habit." RULE 904.06(1), STATS. The predicate evidence must be sufficient to permit a reasonable jury to find a "regular response to a repeated situation." 1 MCCORMICK ON EVIDENCE § 195 at 825.[4]

■

We need not attempt to draw a bright-line rule specifying any minimum number of "specific instances" that passes muster under RULE 904.06(2), STATS., *but see French*, 74 Wis. 2d at 465–466, 247 N.W.2d at 466 (one is enough); *Chomicki*, 128 Wis. 2d at 195–197, 381 N.W.2d at 565 (four is enough), because it is clear from the evidence before the trial court that it acted well within its discretion in receiving Dr. Arcilla's testimony about how he normally positions the arms of patients under his anesthesiological care. Dr. Arcilla testified that although he did not have a specific recollection of how he positioned Mrs. Steinberg's arms during her surgery, his practice when patients are in the supine position during surgery, as was Mrs. Steinberg, was to "usually put the arms between 50, 45

---

[4] We offer the following example of a conditional-relevancy instruction applicable to habit evidence:

Members of the jury, you have heard evidence that (person) always or usually (acts alleged to show habit) whenever he or she (describe the "repeated situation" to which the person's acts are claimed to be a "regular response"). If you believe that evidence, you may but are not required to find that the person acted that way (describe circumstance or event for which the habit evidence is offered).

degrees, less than 90 degree [*sic*] to the body, palms up, and put it [*sic*] in a padded arm board." He told the trial court that "probably half my practice" concerned patients who were in the supine position, "[b]etween 65, 70 cases a month then in 1987." Although he did not remember whether it was his practice to place the patient's arm on an arm board in April of 1987 when Mrs. Steinberg had her surgery, he testified that the arm board would be needed "to support the arm" because Mrs. Steinberg had an IV inserted in her left wrist during the surgery. In response to a question from the trial court, Dr. Arcilla testified that arm boards are normally attached to the side of operating tables.

Dr. Arcilla's testimony described, in the words from the McCormick treatise quoted earlier, his "regular response" of placing in arm boards at the described angles to the body the arms of patients who were presented to him in a supine position, "a repeated situation," as evidenced by the number of such patients to whom he gives anesthesia every month. Indeed, given the low threshold set by *French* to establish "specific instances of conduct sufficient in number to warrant a finding that a habit existed," RULE 904.06(2), STATS., the trial court did not exceed the scope of its discretion in ruling that Dr. Arcilla's sixty-five to seventy cases a month passed muster. There was no error in admitting Dr. Arcilla's testimony about his usual practice in positioning the arms of patients under his anesthesiological care, or in receiving into evidence expert opinions based on that testimony.

B.   *Trial court's denial of the Steinbergs' motion to change the jury's answer from "no" to "yes."*

770

The trial court instructed the jury on *res ipsa loquitur* on the issue of whether Dr. Arcilla was negligent.[5] The jury found that he was not negligent, and the Steinbergs asked the trial court to change the jury's answer. Apparently recognizing that a "jury verdict must be sustained if there is any credible evidence which under any reasonable view of the evidence considered in a light most favorable to the verdict meets the burden of proof applicable to that type of case," *Britton v. Hoyt*, 63 Wis. 2d 688, 693, 218 N.W.2d 274, 277 (1974), the Steinbergs contend that there was no evidence from which a reasonable jury could find that Dr. Arcilla was not negligent. This contention is not supported by the record.

Richard Hodach, M.D., a neurologist called by the Steinbergs, testified that patients in a recovery room following surgery can move their arms even though they are unconscious, and that there could be injury to the ulnar nerve if the patient's arms were folded and

---

[5] The trial court instructed the jury:

If you find that the ulnar nerve of Jacqueline Steinberg was injured during the surgery of April 13, 1987 while the positioning of her arms was under the control of Dr. Arcilla, and if you further find from expert medical testimony in this case that this injury is of a kind that does not ordinarily occur if an anesthesiologist exercises proper care and skill, then you may infer that Dr. Senen Arcilla was negligent.

This rule will not apply if Dr. Arcilla has offered an explanation for the injury to the ulnar nerve of Jacqueline Steinberg which satisfies you that the injury to Jacqueline Steinberg did not occur through any failure on Dr. Arcilla's part to exercise due care and skill. However, the fact that other possible causes have been suggested does not preclude you from inferring that Dr. Arcilla failed to exercise that degree of care and skill which anesthesiologists usually exercise.

771

there was resulting pressure on the nerve. He also testified that it was possible for patients in the recovery room to lean against the metal railing of the carts in which they lay and to put sufficient pressure on the ulnar nerve to cause the type of injury suffered by Mrs. Steinberg. Alan C. Reynolds, M.D., an anesthesiologist called by the Steinbergs, also told the jury that Mrs. Steinberg's injuries could have been caused by contact between her arm and the railing of the recovery-room cart. There was therefore evidence from which the jury could have reasonably concluded that Mrs. Steinberg's injury was caused by some mechanism other than Dr. Arcilla's negligence.[6] This is thus not a case where the evidence is so clear that "no reasonable jury would fail to accept" the *res ipsa loquitur* inference. *See Weggeman v. Seven-Up Bottling Co.*, 5 Wis. 2d 503, 509–510, 93 N.W.2d 467, 472 (1958) ("*[R]es ipsa loquitur* generally gives rise only to a permissible inference of negligence, not a presumption, and if the jury refuses to draw such inference, that is the end of the matter."); *see also Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 14, 531 N.W.2d 597, 599 (1995).[7]

---

[6] Although they now argue that this evidence is speculative, the Steinbergs waived that objection by not making it during the trial. *See* RULE 901.03(1)(a), STATS:

> **(1)** EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
> (a) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

[7] The defendants argue that the trial court should not have given the *res ipsa loquitur* instruction because the evidence showed that Mrs. Steinberg was not under Dr. Arcilla's exclu-

## C. Wis J I—Civil 1023.

The Steinbergs complain that by giving Wis J I—Civil 1023 the trial court improperly tipped the scales in favor of Dr. Arcilla. The following is the part of the trial court's instructions to which the Steinbergs object:

> A physician does not guarantee the results of his care and treatment. He must use reasonable care and he is not liable for failing to use the highest degree of care, skill and judgment. Dr. Arcilla cannot be found negligent simply because a bad result may have followed from his care and treatment. Medical science is not an exact science. Therefore, the issue you must decide in determining whether Dr. Arcilla was negligent is not whether there was a bad result, but whether he failed to use the degree of care, skill and judgment which is exercised by the average anesthesiologist.

The trial court, however, also told the jury that:

> A physician such as Dr. Arcilla is negligent when he fails to exercise reasonable and ordinary care. A physician fails to exercise reasonable and ordinary care when, without intending to do any wrong, he does an act or omits to act under circumstances in which a physician ought reasonably to foresee that such action or omission will subject his patient to an unreasonable risk or [*sic*] injury or damage.

sive control during the time when her ulnar nerve could have been damaged. In light of our conclusion that the trial court did not err in denying the Steinbergs' motion to change the jury's answer to the question asking whether Dr. Arcilla was negligent, we need not analyze that contention. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

773

A trial court has "broad discretion" in giving to the jury those legal principles that the jury must apply in deciding the contested issues of fact. *Fischer v. Ganju*, 168 Wis. 2d 834, 849, 485 N.W.2d 10, 16 (1992). An appellate court will not reverse if the trial court's instructions to the jury, taken as a whole, correctly state the law. *Id.*, 168 Wis. 2d at 850, 485 N.W.2d at 16. The instruction about which the Steinbergs complain accurately stated the law, especially when viewed in context with the other instructions bearing on Dr. Arcilla's alleged negligence, and did not unfairly tip the scales in Dr. Arcilla's favor. *See Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 162 (1988) (physician not an insurer or guarantor); *Hoven v. Kelble*, 79 Wis. 2d 444, 465, 256 N.W.2d 379, 389 (1977) (" 'Medical sciences are not exact.' ") (citation omitted); *Francois v. Mokrohisky*, 67 Wis. 2d 196, 201, 226 N.W.2d 470, 472 (1975) (physician "not liable for failing to exercise an extraordinary degree of care"; physician not negligent unless bad result is caused by physician's failure "to conform to the accepted standard of care").

*By the Court.*—Judgment affirmed.