WILLIAMS, Appellant v. SUPERIOR AIRWAYS, Respondent

(99 N.W.2d 224)

(File No. 9746. Opinion filed November 13, 1959)
Rehearing denied December 22, 1959.
See above entitled case at page 203.

**Gunderson, Farrar & Carrell,** Rapid City, **Melville C. Williams, Pope & Ballard,** Chicago, Ill., for Plaintiff and Appellant.

**Bangs, McCullen & Butler, Thomas H. Foye,** Rapid City, for Defendant and Respondent.

BIEGELMEIER, J.   On August 1, 1948, plaintiff as owner of a tract of land in Pennington County entered into a written lease with defendant Superior Airways for a period of twenty years with an option for renewal of a like period; while the lease did not specify any use or purpose for which the property was rented, it contained the following clauses:

> **"Covenants** Lessee covenants that it will not permit the sale of intoxicating liquors on the premises. Lessor and lessee agree that the leased premises are not to be used for agricultural purposes; however, lessee may cut the hay and grasses growing thereon.

> **"Buildings** At the expiration or termination hereof, lessee shall have the right to remove all buildings and structures (except inclosing fences) subject only to the lien of lessor for any unpaid rent due hereunder. * * *

> **"Assignment** Lessee shall have the right to sublet or assign this lease, but such assignment shall not affect lessee's liability for rental payments."

It is undisputed that at the time the lease was executed the property had been and was being used for airport purposes; there was a flying school there and some buildings, a hangar—a 40 or 50-foot concrete block building, had been erected on it by former tenants. In 1952 a highway right of way for which plaintiff was paid $4,000 was put through the property under condemnation proceedings or threat of them; this rendered the property unusable for airport purposes; plaintiff knew this business had been closed and the property was being used for something other than airport purposes; thereafter defendant had an opportunity to sublease part of this property and as a result of some discussions plaintiff and defendant on January 25, 1956 executed an amendment to lease in the following terms:

> "Whereas, it was the purpose and intent of the lessor, Blanche C. Williams, and the lessee, Superior Airways, Inc., in that certain lease dated August 1,

1948 and which was filed for record and recorded in the Office of the Register of Deeds of Pennington County, South Dakota, in Book 42 of Miscellaneous at page 240 that the lessee should have the right and privilege to erect building and structures on the premises described therein, to wit:

"The Southwest Quarter of Section 28 in Township 2 North of Range 8, East of the Black Hills Meridian, Pennington County, South Dakota paragraph Seven of said lease is amended to read as follows:

" 'Lessor grants and gives to the lessee the right and privilege to construct upon said premises such building and structures as it may desire during the term of this lease. This right and privilege shall extend to sublessees if granted to such sublessees by the lessee. The lessee on its part agrees to protect the lessor against any and all liens that may be filed against said premises by any contractor, material man, or workman resulting from the construction of any building and structure placed upon said premises by said lessee, his assignee or sublessee.

" 'At the expiration or termination hereof, lessee shall have the right to remove all buildings and structures (except inclosing fences) subject only to the lien of lessor for any unpaid rent due hereunder.' "

By letter of February 27, 1956 addressed to the Rushmore Mutual Life Insurance Company directed to the attention of Mr. Williamson, one of the defendant's attorneys and the person who negotiated for this amendment, notice was given that plaintiff revoked and rescinded such amendment "for good and sufficient statutory reasons" and on April 29, 1957 plaintiff commenced this action. The complaint among other things alleged that plaintiff was old and infirm and not experienced in business matters and executed instruments offered her relying on the representa-

tions of defendant's agent; that the papers related wholly to removing of, and protecting her from further, liens on the property; that there was no consideration for the amendment and that she executed it through inadvertence, mistake and lack of experience and undue influence of the defendant's agent and prayed that the amendment be adjudged null and void and rescinded. Defendant's answer contained a prayer for a declaratory judgment, defining the rights of the parties under the lease and amendment.

The trial court entered its decision consisting of three findings of fact and two conclusions of law and upon these entered judgment that plaintiff take nothing by her complaint and that the defendant had the following rights among others:

"a. To assign or sublease the premises in whole or in part.

"b. To erect and construct by itself or through its assigns or sub-lessees any buildings or structures upon the leased premises together with a lawful use thereof with the right by itself or through its assigns or sub-lessees to remove such buildings or structures except inclosing fences upon termination or expiration of the lease and any lawful renewals thereof subject only to the lien of the Lessor for any unpaid rentals due thereunder;

"c. To utilize the premises for any lawful purpose except for the sale of intoxicating liquors or for agricultural purposes."

Plaintiff appealed and in her brief states that only one of these findings is contested on this appeal and that is Findding No. 3 wherein the trial court found

"That there was no fraud or misrepresentation of any kind in connection with the procurement of the aforesaid amendment; that the plaintiff executed same in consideration of the mutual covenants contained therein and without inadvertence, mistake, undue influence, or other legal disabilities."

At the trial plaintiff claimed that the lease is "not clear and unambiguous but it has two ambiguities in it"; that these ambiguities existed as to the two clauses with reference to Buildings and Assignments set out above. Under this situation plaintiff testified that the future use of the property under the lease was that it was to be used and was was used as an airfield until the highway went through in 1952; that she did not rely on any other statements made by the defendant's agent except as to certain liens that appeared on the abstract; that she read the amendment to lease before she signed it and apparently understood it; that she didn't object to buildings being put up before. Mr. Williamson, who was general counsel for Rushmore and who was given the abstract of the property to look at for defendant, was called by plaintiff as her witness. He testified the statement in the amendment that it was the purpose and intent of plaintiff and defendant in the 1948 lease that defendant should have the right and privilege to erect buildings and structures on the premises was prepared by him after he talked to plaintiff; that the reason the amendment was desired was they were dealing with a layman and he found out there was no provision in the lease itself for the construction of buildings and was not too certain of having a right to put them up and he was careful and wanted to be sure he had the right to do it; he talked to plaintiff about this and told her that there was some question in his mind whether this man would go through with it unless there was a specific provision in the contract to permit such construction.

■ Plaintiff has not argued assignments of error Nos. 15 and 16 which presented plaintiff's theories of undue influence and constructive fraud and these are therefore deemed abandoned. Chambers v. Wilson, 67 S.D. 495, 294 N.W. 180; New York Life Ins. Co. v. Hyde, 68 S.D. 516, 4 N.W.2d 812. Plaintiff's assignment of error No. 11 states only that the court erred in entering Finding No. 3 and does not point out the error alleged to exist, nor the insufficiency of the evidence to justify it. SDC 33.0735; Stoecker v. Stoecker, 74 S.D. 415, 54 N.W.2d 171. Plaintiff presented proposed findings and conclusions to the effect. that the

amendment was executed under a mistake of law and has assigned and argued as error, the refusal of the trial court to adopt these and enter a judgment for plaintiff; they will be so considered.

A party to a contract may rescind if consent is given by mistake, SDC 10.0802; this may be a mistake of law, SDC 10.0311, when it arises from

"(1) A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law; or

"(2) A misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify." SDC 10.0313.

Plaintiff testified she did not think the amendment changed the whole lease; that she read the amendment before she signed it; the evidence further showed that her deceased husband was, and her son now is, a lawyer; she had leased other properties; she talked about the old liens referred to in the complaint over the phone with a woman who had been her husband's secretary for nearly thirty years and was then employed in the office of his successor; but didn't remember further talk; the witness Williamson testified he did discuss the amendment over the telephone with a person he assumed was plaintiff's lawyer, this conversation was from plaintiff's home and in her presence.

Plaintiff also introduced in evidence prior leases on this property and a lease to the Star-lite Theaters for Lot A, which was excluded from the tract leased to defendant, and from the wording of these leases argues that they indicate the intention of the parties to the 1948 lease was not to permit the erection of buildings thereunder. These leases do not follow any pattern; all were rather brief, all contained the ban against the sale of intoxicating liquor; none contained any reference to the purpose for which the property was leased except some contained the clause that

it was **not** to be used for agricultural purposes. The 1945 Schroeder lease for 50 years at a $50 monthly rental did not expressly grant the tenant the right to erect buildings; it stated only that the tenant "shall pay the taxes levied upon any buildings or improvements he may place upon the above land"; when it was assigned to Hopkins and Swetich, a 1946 amendment of that lease agreement signed by plaintiff, expressly gave them the right to erect "such buildings and structure as they may desire". The 1947 Anderson lease stated that the tenant was to pay all taxes against such buildings and structures "now located or hereafter placed thereon", without any explanation about who could place them on the land. Defendant's lease permitted removal of **all** buildings and structures by the tenant; the Star-lite lease drawn and entered as part of the same negotiations permitted Sta-lite to remove all buildings but **denied** it the right to erect any structures within 300 ft. of defendant's property or over a certain height without **defendant's** (Superior Airways) consent.

Neither of these present leases indicates, or otherwise limits, the use of the property, except they prohibit the sale of intoxicating liquors and state that it was not to be used for agricultural purposes, under them Star-lite and defendant pay $65 a month rent and the taxes.

Plaintiff here contends that the 1948 lease is not ambiguous, that even if it is construed to be ambiguous, the facts surrounding its execution and the avoidance of injustice all require that any ambiguity be resolved against the right of the tenant to construct buildings; that SDC 38.0406 further limits defendant's rights. Where the language of a lease is ambiguous, in ascertaining the intention of the parties, the court may consider the surrounding facts and circumstances which existed at its execution. Huffman v. Shevlin, 76 S.D. 84, 72 N.W.2d 852. While it is a general rule that a tenant may not make material changes or alterations in buildings or remove or destroy them (32 Am.Jur., Landlord and Tenant, §§ 206 and 207; 51 C.J.S. Landlord and Tenant § 372) and the erection of a new building on vacant land has been held not to be waste (Winship v. Pitts, 3

Paige, N.Y., 259; Thompson on Real Property, Perm.Ed Vol. 4 § 1616; 32 Am.Jur., Landlord and Tenant, § 209; Cf. Pynchon v. Stearns, 52 Mass. 304, 45 Am.Dec. 207; Justen v. Oxboro, 209 Minn. 327, 296 N.W. 169; Ryan v. Sioux Gun Club, 68 S.D. 345, 2 N.W.2d 681) it is not necessary for this decision to rest on an adherence to, or application of, these authorities or the effect of SDC 38.0406 on the 1948 lease, for the reasons hereafter noted, we feel bound by the trial court's finding.

As indicated above, in evidence introduced by plaintiff, the 1956 amendment of defendant's 1948 lease was practically the same kind of amendment which plaintiff executed in 1946 when she signed an agreement with Hopkins and Swetich, (successors to the 1945 Schroeder lease) that the tenants have the right and privilege to construct such buildings and structures as the tenants may desire, so she was no stranger to such transactions and it does not appear that she ever misunderstood or complained of that transaction. See Ireland v. Charlesworth, N.D., 98 N.W.2d 224. She was advised to consult an attorney, that there was some question in the mind of the emissary of defendant if the prospective subtenant would go ahead with a substantial investment in building on the property unless there was a specific provision put in the contract to permit this construction; it brought to plaintiff's attention that someone thought the 1948 lease ambiguous and uncertain even though the defendant's emissary believed it unnecessary.

Plaintiff's argument of resulting injustice no doubt was also made in the trial court and is based on the fact that defendant has entered a sublease under which it is to receive $375 per month from a tenant who expects to use the property as a truck stop. The evidence showed that Hopkins and Swetich failed to pay the $50 monthly rental under the Schroeder fifty-year lease and apparently abandoned it; if in their opinion it was then valuable, they would not have done so and when the highway condemnation made the land useless for airport purposes, its then value may have been problematical, yet defendant paid its rent while the property was put to several other uses, such

as truck storage, auction sales and for advertising signs and injustice may have been on the other side. Neither of these injustice situations affects the validity of the amendment. Plaintiff's further claim that the land will be damaged by the erection of buildings is in the same category; it does not appear that a truck stop with concrete driveways would be substantially different from the cement block building or hangar now on the property or runways built for airport purposes. If plaintiff should be damaged by any injury to the real estate by acts of the defendant or its subtenant she can bring an action to enforce her rights. While, under all the evidence and lawful inferences therefrom, the trial court could have made a different finding, there was sufficient evidence for Finding No. 3. It cannot be said that the evidence preponderates against this finding and consequently we may not disturb it. Huffman v. Shevlin, supra. The amendment being in writing did not require any consideration. SDC 10.0806 so provides.

The judgment is affirmed.

All the Judges concur.