# BIG BAND, INC., Respondent v. WILLIAMS, Appellant

## (202 N.W.2d 121)

(File No. 11026. Opinion filed November 15, 1972)

Keith A. Tidball of Tidball, Blando, Kenmitz & Axtmann, Pierre, for plaintiff and respondent.

John L. Wilds, Sioux Falls, for defendant and appellant.

BIEGELMEIER, Judge.

This action is based on a contract whereby plaintiff was to manufacture and distribute and defendant was to buy a quantity of cattle guards invented by defendant, a rancher turned inventor. Altered and amended as to the number only as hereafter mentioned, the contract provided defendant would buy 500 of the guards over a period of six months at $100 each. Provision for payment was that defendant "will advance * * * $40.00 * * * for each cattle guard manufactured and available for sale" and "pay the remaining * * * $60.00 for each cattle guard as he [defendant] removes it from stock or at the time it is shipped to a dealer or distributor." Big Band agreed to pay defendant a royalty of $5 for each guard manufactured and sold by it. The complaint alleged defendant failed and refused to accept and pay for the "quantity specified in the * * * contract." Defendant's answer included a counterclaim. While there was no statement in the complaint of performance of the contract on its behalf or that it had manufactured all or any part of the guards or defendant had removed any guards from stock or shipped them to a dealer, the evidence showed plaintiff did manufacture a quantity of the guards and defendant sold some of them. The unit is both a gate and a guard; it permits passage of vehicles but because of the construction it impedes or discourages cattle from crossing it.

Trial was to the court. On findings of fact and conclusions of law, the court entered a judgment which dismissed defendant's counterclaim and awarded plaintiff $29,446.99 damages.

■ It appears the contract as first written and signed provided that defendant would buy 1,000 guards. During production, which began in January 1970, the parties changed the contract by striking out the 1,000 figure, inserting 500 in lieu thereof and initialing the change; otherwise it remained as written, including the original date of January 13, 1970. By reason of some suggestion in the briefs of an earlier oral contract and a lack of consideration for one of them and therefore doubt as to the contract before the court, we note that SDCL 53-8-6 provides:

"A contract not in writing may be altered in any respect by consent of the parties, in writing, without a new consideration, and is extinguished thereby to the extent of the alteration."

SDCL 53-8-7 next provides: "A contract in writing may be altered by a contract in writing without a new consideration * * *". Here the contract was so altered by defendant and the same officer of plaintiff who negotiated and signed it for plaintiff. The contract as first written extinguished the prior oral ·agreement, if there was one, under SDCL 53-8-6, and the alteration made in writing of the contract as first written was a valid alteration thereof under SDCL 53-8-7. Neither required a new consideration and the contract as so altered is the only contract between the parties before the court for decision. See Williams v. Superior Airways, 78 S.D. 148, 99 N.W.2d 224.

The trial court found plaintiff manufactured 424 guards, of which 25 were sold by plaintiff. Of the 399 manufactured for defendant, 130. were delivered to him and 29 to Williams' dealers; this left a balance of 240 guards on hand and 101 not built. From plaintiff's evidence that the cost of material was $42.61 and the cost of labor was $9.89, the trial court found the cost of each cattle guard was $52.50 plus $12.50 for overhead or a total of $65, leaving a profit to plaintiff of $35 per guard.

The trial court's findings were in considerable detail and involved various charges and credits. Mention of some of these will be made. At the outset the amounts here mentioned are in accord with the trial court's findings, undisputed or admitted.

The serious question involved is damages. Plaintiff consistently contended in the trial court and contends here that this action is one for recovery of damages from breach of contract under SDCL 21-2-1 and that the U.C.C. does not apply as neither the trial judge in his opinion nor counsel in their briefs here have cited and argued any provisions of the U.C.C.; therefore, we review the judgment so far as this action is concerned under SDCL 21-2-1 and 21-1-5 which have been cited and argued.

SDCL 21-2-1 provides:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin."

SDCL 21-1-5 reads:

"Notwithstanding the provisions of these statutes, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the *full performance* thereof on both sides [with exceptions not here applicable] * * *." (emphasis supplied)

When the action is for breach of contract, plaintiff is entitled to recover all his detriment proximately caused by the breach, not exceeding the amount he would have gained by full performance. The issue is what he is entitled to under his contract, less the cost of fully completing it in accord with its terms. Davis v. Tubbs, 7 S.D. 488, 64 N.W. 534, citing the predecessor of SDCL 21-1-5. Applying these guides to the facts here, the judgment must be reversed.

In our opinion special tooling costs of $5,502 are not an allowable damage. Plaintiff's brief admits that at the time of the initial contract "it was not within the contemplation of the

parties to (1) build a paint shop; (2) construct or buy overhead racks, a special rod cleaner and jigs." It claims this was done after the contract was entered into either "because of demands by appellant or because of the new nature of the product". This constitutes no reason to charge this cost to defendant. That plaintiff was required to buy all tools necessary to perform the contract was a matter to consider when it entered into the contract. The purchase price of tools, other equipment or the erection of a building are not charges that can be made against a party to a contract to manufacture a product therewith. They are costs of commencing and continuing in business, the depreciable part of which is deductible from gross income and reduces the manufacturer's taxable income. To require a party to pay these costs would subject him to inordinate and unknown costs and damages which would be different where the contract was with a manufacturer without any fixtures or equipment than the damages would be where the manufacturer was so equipped.

■ The court further erred in charging defendant with the "Cost of material ordered but not used [as] $11,852.87". This amount is excessive and therefore is explained. It appeared from the testimony of plaintiff's witness, upon which the court based its findings, that this amount is the cost of materials ordered by plaintiff which were not used in the manufacture of guards under the contract. The court charged the full cost to defendant. However, in accord with the testimony of the same witness that this material had a value of 50% or $5,926.43, the court then allowed a credit of 50% and a $1,500 salvage value found for the paint shop. The court's finding of a $42.61 value of material for each guard must be accepted because undisputed. At the $42.61 material cost of each unit, "Cost of material ordered but not used" should have been $4,304 and its 50% value $2,152.

■ The court charged defendant with an advertising cost. This consists of two parts, the first part for $433.70 claimed under an oral agreement that it would be shared equally. Defendant claims it was not pled in the complaint. It was not. However, an objection that it was not within the issues was not made, and not having been presented in the trial court it cannot be urged here. Moody County v. Cable, 82 S.D. 537, 150

N.W.2d 193. The other advertising for the purpose of attempting to sell the guards and surplus material on hand was for the purpose of mitigating damages and establishing the value of the guards. This advertising cost was not shown to be unreasonable, and as defendant received the benefit of establishing the value of the guards for which he is entitled to credit, he may not challenge it.

■ The finance charges incurred because of plaintiff's inability to pay a bill for steel purchased or one for insulating the paint shop are not allowable. The latter, being an added cost of building the paint shop, is not a compensable damage for the same reason the cost of the building is not allowed. As to the finance charges, SDCL 21-1-13, cited by plaintiff, does not apply to interest paid by a party, it applies to interest on the award of damages in the instant action. Nor may finance charges or interest be allowed under the 22 Am.Jur.2d, Damages, § 59 rule. The text there refers to special damages allowable under special conditions not foreseeable here or those within the contemplation of the parties. On the implied agreement theory there noted, the text warns that the danger of that approach is that the court must search for express assent to assume such special damages. We perceive no such assent here.

■ It seems clear that the court erred in not allowing defendant a credit for the 240 guards in plaintiff's possession. As to their value, the retail price of these guards was $187.50; the court found plaintiff sold 29 to dealers and 25 at retail and defendant took delivery of 130 for which he agreed to pay, and did pay, $100 each. The cost of material and labor per guard was $52.50 plus $12.50 for overhead, making a manufacturing cost of $65 each, not counting the patent or invention right. One of plaintiff's witnesses, an officer who testified at length about this transaction and on whose evidence of damages plaintiff's case must rely, testified these guards had a salvage value of $25 each and that the value of the 240 guards was $6,000. This is the value which this witness used to compute plaintiff's damages. Plaintiff's brief admits this testimony in the record and mentions some other testimony, which was not used by the witness or the court to compute plaintiff's damages, and then states the trial

court, in not finding the salvage value of the guards, chose to ignore all the testimony with respect to their value and asserts that since defendant had offered no evidence of values that none existed. This does not follow as a plaintiff has the burden of proving damages. From a $65 cost of manufacturing, a $100 price to defendant and a $187.50 retail sale price, the $25 per unit salvage value ($6,000 for the 240 units) testified to by plaintiff's witness was binding on plaintiff even though defendant offered no other evidence on that issue, and the court erred in not so finding. Platt v. Meier, 83 S.D. 10, 153 N.W.2d 404; Bunkers v. Mousel, 83 S.D. 45, 154 N.W.2d 208. Other claims of error asserted by defendant lack merit.

From this review plaintiff is entitled to recover the following as damages:

| | | |
|---|---|---|
| 399 guards built at $100 | $39,900.00 | |
| 101 guards not built at $47.50 (loss of profit of $35 + $12.50 overhead per guard) | 4,797.50 | |
| 50% loss on materials ordered but not used on 101 guards at $42.61 | 2,152.00 | |
| Advertising | 935.05 | |
| TOTAL GROSS DUE | | $47,784.55 |
| Defendant's Credits: | | |
| Payments by Williams to plaintiff | $22,671.00 | |
| Payments by dealers to plaintiff | 3,810.00 | |
| Royalties due from plaintiff | 125.00 | |
| Value of completed guards held by plaintiff (240 X $25) released from $5 royalty | 6,000.00 | |
| TOTAL CREDITS | | 32,606.00 |
| TOTAL DAMAGES DUE | | $15,178.55 |

It appears from the record that the parties have litigated, submitted evidence on and argued all the issues involved. Under the findings of fact, undisputed evidence and the admissions of the parties, the balance due plaintiff is $15,178.55. It is, therefore, ordered that the judgment appealed from is modified to allow plaintiff to recover judgment in the sum of $15,178.55 as of the date it was entered, and, as so modified, affirmed.

All the Judges concur.