David H. LARSON, Plaintiff
and Appellee,

v.

KREISER'S, INC., Defendant
and Appellant.

No. 16951.

Supreme Court of South Dakota.

Argued Oct. 23, 1990.

Decided June 26, 1991.

Robert J. Burns of Burns & Ford, Sioux Falls, Jonathan K. Van Patten of Vermillion, on the brief, for plaintiff and appellee.

Karen Schreier of Hagen & Wilka, Sioux Falls, Thomas K. Wilka, on the brief, for defendant and appellant.

MILLER, Chief Justice.

Kreiser's, Inc. appeals from a jury verdict in favor of David Larson in an action arising from his termination of employment with Kreiser's. We affirm in part, reverse in part, and remand.[1]

Wuest, J. concurred in part and dissented in part and filed opinion.

Sabers, J., concurred in part and dissented in part and filed opinion in which Morgan, Retired Justice, joined.

## FACTS

Kreiser's, Inc. is a family-owned business in Sioux Falls, South Dakota, which sells medical supplies. Plaintiff David Larson is the son of Harold Larson, the president

1. We previously reversed summary judgment in this case. *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833 (S.D.1988) (*Larson I*).

and chief executive officer of Kreiser's, Inc.

In 1967 (while David was in high school), David told Harold that he wanted to work at a grocery store in Sioux Falls. According to David, Harold said he did not want that and asked David to start working in the family business. David testified that it was important to Harold that the business stay in the family.

Therefore, in 1967, David began working in the warehouse,[2] eventually becoming in charge of the warehouse crew, and then he began to learn the purchasing side of the business. In 1976, David was transferred to Sioux City, Iowa, to fill a sales position in a newly opened Kreiser's store. Two years later, Kreiser's general manager retired and as a result David was promoted to operations manager. He was promoted to the position of vice-president in 1981.

David testified that Harold repeatedly promised him that one day he would be president of Kreiser's.

There was no written employment contract between David and Kreiser's. There is no evidence that David was employed for a specified term. On January 12, 1987, David's employment with Kreiser's was terminated by Harold. David never served Kreiser's as president.

In 1987, David sued Kreiser's alleging breach of implied and express contract, wrongful termination, breach of fiduciary duty, and intentional infliction of emotional distress. Kreiser's counterclaimed alleging that David owed it money on account. The jury awarded David $1,225,315 in his action and Kreiser's $7,887.75 on its counterclaim. Kreiser's appealed the award to David.

### ISSUE I

WHETHER THE TRIAL COURT ERRED IN GIVING AN INSTRUCTION THAT THE PROMISE OF EMPLOYMENT IN A PARTICULAR POSITION NEED NOT BE MADE AT THE INCEPTION OF EMPLOYMENT.

At trial, the court gave the following instruction to the jury:

10.

An employer who promises as part of the employment agreement to employ a person in a specified position, such as 'president', is bound by law to discharge that person only for 'good cause.'

*These promises do not have to be made to the employee at the time of hiring,* or be in writing, but can be verbal and can be made during the period of his employment.

If you find that defendant promised the plaintiff that he would become president and if you find a reasonable expectation of getting that position, and if you find plaintiff continued to work in reliance upon such promise, then you are instructed that there was an employment contract which could only be terminated for good cause. (Emphasis added.)

Kreiser's argues that the trial court erred in giving the foregoing instruction. They assert that an oral employment contract must offer a specific position at the inception of employment. *Citing Merritt v. Edson Exp., Inc.,* 437 N.W.2d 528 (S.D.1989); *Breen v. Dakota Gear & Joint Co., Inc.,* 433 N.W.2d 221 (S.D.1988); *Larson I, supra.*

"We review the jury instructions by construing them together and the instructions are not erroneous if when so construed they provide a full and correct statement of the law applicable to the case at bar." *Frazier v. Norton,* 334 N.W.2d 865, 870 (S.D.1983); *State v. Grey Owl,* 295 N.W.2d 748 (S.D.1980); *Dwyer v. Christensen,* 77 S.D. 381, 92 N.W.2d 199 (1958).

SDCL 60–4–4 provides: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." Further, this court has held that when there is no employment contract or specified term of employment, and an employer has no established procedures for discharging employees, the employment is terminable at the will of the employer under SDCL 60–4–4. *Hopes v. Black Hills Power and Light Co.,* 386 N.W.2d 490

---

**2.** David was married in April of his senior year in high school in 1969. After high school, he attended a year of college in Sioux Falls while he worked part-time at Kreiser's.

(S.D.1986); *Tombollo v. Dunn*, 342 N.W.2d 23 (S.D.1984).

In *Larson I*, we held that an express or implied contract of employment may be created on the basis of an employer's oral representations, *citing Zaniecki v. P.A. Bergner & Co.*, 143 Ill.App.3d 668, 97 Ill. Dec. 756, 493 N.E.2d 419 (1986); *Terrio v. Millinocket Community Hospital*, 379 A.2d 135 (Me.1977); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985); *Sea–Land Service, Inc. v. O'Neal*, 224 Va. 343, 297 S.E.2d 647 (1982); *O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182 (E.D.Pa.1978); L. Larson, Unjust Dismissal § 3.04 (1987).

■ Here, the trial court correctly instructed the jury that a worker who is verbally promised future promotion to a specific position in exchange for his labor is not an at-will employee under SDCL 60–4–4 and may be discharged only for cause. *Merritt v. Edson Exp., Inc.*, 437 N.W.2d 528, 529–30 (S.D.1989); *Larson I, supra.*

In *Merritt*, we explained our holding in *Larson I* by stating that Kreiser's "promised [Larson] a particular position (president) if [he] continued to do a good job and stayed with the company." 437 N.W.2d at 530. The trial court echoed this reading when it instructed the jury that "if you find [Larson] continued to work in reliance upon such promise, then ... there was an employment contract which could only be terminated for good cause."

Under the facts of this case, the trial court's instruction was not error. Therefore, we affirm the trial court on this issue.

## ISSUE II

WHETHER THE TRIAL COURT CORRECTLY INSTRUCTED THE JURY ON AN IMPLIED–IN–FACT CONTRACT THEORY.

The trial court instructed the jury as to the implied-in-fact theory of contract as follows:

6.

A contract may be made in any manner sufficient to show agreement. It may be oral or written, or implied from the conduct of the parties. In an oral or written contract the terms are stated by the parties. In an implied contract, they are inferred as a matter of reason and justice from the acts and conduct of the parties, any language used, and the circumstances surrounding the transaction.

Instruction No. 7 provided:

7.

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is determined inferred from the conduct of the parties, the language used, or the acts done by them, or other pertinent circumstances attending the transaction.

Instruction No. 8 provided:

8.

In determining whether David Larson's employment contract with Kreiser's Inc. contained an implied promise that the employer would not act arbitrarily with respect to his employment, that is, would not terminate him without good cause, you may consider the totality of the parties' relationship. Such implied agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and the surrounding circumstances. You may consider facts such as (1) the duration of David Larson's employment, (2) the commendations and his promotions he received, (3) any criticism of his work, (4) any assurances he was given, (5) the personnel policies of Kreiser's Inc. acknowledged to him, and (6) any evidence tending to negate the existence of such an implied promise.

Kreiser's note that the only time that this court has recognized an implied termination "for cause only" contract is in a situation wherein an "employee handbook" contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which

the employer agrees to follow prior to any employee's termination. *Citing Butterfield v. Citibank of South Dakota*, 437 N.W.2d 857 (S.D.1989); *Osterkamp v. Alkota Mfg. Inc.*, 332 N.W.2d 275 (S.D.1983).

Here, the trial court specifically held that Kreiser's handbook did not meet the requirements for an implied contract pursuant to the mandates of *Butterfield*. It therefore granted Kreiser's motion for a directed verdict based on the employee handbook theory. Nonetheless, the trial court gave the foregoing instructions dealing with implied contracts to the jury.

It is settled law that South Dakota is an employment-at-will state. SDCL 60-4-4. Thus, any exceptions to this policy must be narrowly construed. *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225 (S.D.1988). Therefore, it was error for the trial court to instruct the jury on an implied contract theory. The trial court's ruling directing a verdict for Kreiser's, aforesaid, was dispositive of the implied contract issue. *See Butterfield, supra; Osterkamp, supra.*

## ISSUE III

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN PROHIBITING KREISER'S FROM INTRODUCING EVIDENCE THAT DAVID CONVERTED ASSETS OF KREISER'S.

David took three checks made payable to Kreiser's and deposited them into his personal bank account. David admitted this and confessed judgment in the amount of $6,805.11 plus interest shortly before trial of this case. During trial (on cross-examination of David), Kreiser's sought to introduce evidence that David had converted these checks from Kreiser's. The trial court would not allow Kreiser's to impeach David with this evidence, despite his prior

testimony that he "loved" the company and that he was a loyal and faithful servant of Kreiser's. The trial court determined that this was inadmissible impeachment with extrinsic evidence.

The standard of review of an evidentiary ruling of the trial court is that of abuse of discretion. *State v. Woodfork*, 454 N.W.2d 332, 335 (S.D.1990); *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987); *State v. McNamara*, 325 N.W.2d 288, 291 (S.D.1982). An abuse of discretion "refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984); *Woodfork, supra; Bartlett, supra.*

Kreiser's argue that evidence of David's alleged conversion of corporate assets is material on the issue of whether they had good cause to discharge him. David responds, citing SDCL 19-14-10 [3] which governs the use of extrinsic evidence to attack or support the credibility of a witness. David asserts that the trial court did not abuse its discretion.

Kreiser's had raised the defense that it had just cause for the termination of David and evidence suggesting that he may have converted corporate assets should have been before the jury. We agree.

Kreiser's appropriately argue that the evidence was admissible under SDCL 19-14-10 as probative of David's truthfulness. SDCL 19-14-10 recognizes that extrinsic evidence may be introduced at the discretion of the court if the evidence is probative of truthfulness or untruthfulness. *Citing State v. Eagle Hawk*, 411 N.W.2d 120 (S.D.1987).

David's confession of judgment is relevant to his credibility and probative of his

---

**3.** SDCL 19-14-10 provides:

*Specific instances* of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in §§ 19-14-12 to 19-14-16, inclusive, *may not be proved by extrinsic evidence.* They may, however, *in the discretion of the court,* if probative of truthfulness or untruthfulness, *be inquired into on cross-examination of the witness*

 (1) concerning his character for truthfulness or untruthfulness, or

 (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

(Emphasis added.)

truthfulness or untruthfulness. *See Woodfork*, 454 N.W.2d at 341 (Sabers, J., dissenting). (In fact, in the present case, the trial court initially decided twice that the evidence was admissible for the purposes of impeachment but later reversed itself.) It was prejudicial error for the court to disallow the introduction of this evidence when David testified, among other things, that he "loved" Kreiser's and was always a loyal and faithful employee.

In light of our foregoing holdings, we determine not to address the remaining issues.

Affirmed in part, reversed in part, and remanded for a new trial.

HENDERSON, J., concurs.

WUEST, J., concurs in part and dissents in part.

SABERS, J., and MORGAN, Retired Justice, concur specially in part and dissent in part.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

WUEST, Justice (concurring in part and dissenting in part).

I agree with the majority on Issues I and II.

As to Issue III, it is my opinion the trial court did not abuse its discretion in denying the admission of the three company checks deposited in plaintiff's personal account. SDCL 19–14–10 provides the admissibility of this evidence is discretionary with the trial court. *See United States v. Young*, 567 F.2d 799 (8th Cir.1977), *cert denied*, 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1978); *United States v. Burch*, 490 F.2d 1300 (8th Cir.), *cert denied*, 416 U.S. 990, 94 S.Ct. 2400, 40 L.Ed.2d 769 (1974). *See generally* J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 608[05]; E. Cleary, et al., *McCormick on Evidence* § 42 (3d 1984); Annotation, *Construction and Application of Rule 608(b) of Federal Rules of Evidence, Dealing with Use of Specific Instances of Conduct to Attack or Support Credibility* 36 A.L.R.Fed. 564 (1978).

This court has defined abuse of discretion for evidentiary rulings as "discretion exercised to an end or purpose not justified by, and *clearly against*, reason and evidence." *Woodfork*, 454 N.W.2d at 335 (emphasis added). *Accord Bartlett*, 411 N.W.2d at 414.

The trial court's refusal to admit this evidence was not clearly against reason. The admission of any evidence, whether for impeachment or otherwise, is subject to a balancing of probative and prejudicial effect. SDCL 19–12–3. The trial judge, who was present to hear and see the witnesses, is in a better position to decide these questions than an appellate Justice reading a cold record. The majority opinion does not cite any authority in support of its position on Issue III, except the recent dissent of Justice Sabers in *Woodfork*. This writing is a minority position, and I submit it is insufficient support for finding an abuse of discretion in this instance.

SABERS, Justice (concurring specially in part and dissenting in part).

I concur in Issue III, concur specially on Issue I and dissent on Issue II.

The trial court correctly instructed the jury that a worker who is verbally promised future promotion to a specific position in exchange for his labor is not an at-will employee under SDCL 60–4–4 and may be discharged only for cause. This is good law. *Merritt v. Edson Exp., Inc.*, 437 N.W.2d 528, 529–530 (S.D.1989); *Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221, 223 (S.D.1988); *Larson v. Kreiser's, Inc. (Larson I)*, 427 N.W.2d 833, 834 (S.D.1988).

Furthermore, just because a worker is employed at-will for ten years does not mean his employer cannot one day promise him a future promotion in exchange for his *continued* labor. In such a case the worker ceases to be employed at-will and may thereafter be discharged only for cause. In most of the cases we relied on in *Larson I*, at-will employment was transformed into good-cause employment in precisely this way by an oral contract entered into in midstream. *See e.g., Zaniecki v. P.A. Bergner*

*& Co.*, 143 Ill.App.3d 668, 97 Ill.Dec. 756, 493 N.E.2d 419 (3 Dist.1986); *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985); *Sea–Land Service, Inc. v. O'Neal*, 224 Va. 343, 297 S.E.2d 647 (1982); and *Terrio v. Millinocket Community Hospital*, 379 A.2d 135 (Me.1977).

If Larson "accepted employment after being given a specific oral promise," *Breen*, 433 N.W.2d at 223, employment subsequent to the promise was not at-will regardless of whether he happened to have been employed at-will prior to the promise. I agree with the majority that the trial court's drawing of this common sense conclusion was correct.

However, the majority opinion holds on Issue II that "it was error for the trial court to instruct the jury on an implied contract theory." It does not say why. The effect is that while employers and workers may contract out of at-will employment, they are for some reason forbidden to do so by means of one type of contract which is as legally binding as an express contract in other contexts. If this distinction is not arbitrary and there is actually some policy argument or persuasive authority to support the distinction, the opinion should cite it.

How can this court reject an implied-in-fact contract theory in this case when *Larson I* explicitly stated that Larson "filed suit for breach of *implied* and express contract," 427 N.W.2d at 833 (emphasis added), and held that summary judgment on this issue was inappropriate? Since we effectively told the circuit court it had to submit the question of whether an implied contract existed to the jury, it seems anomalous to now reverse the court for telling the jury where it might look for evidence of such a contract.

Accordingly, I would affirm the trial court on Issue II also.

MORGAN, Retired Justice, joins this special writing.