1999 SD 165

**James D. BAD WOUND, Plaintiff and Appellant,**

**v.**

**LAKOTA COMMUNITY HOMES, INC., Defendant and Appellee.**

**Nos. 20929, 20936.**

Supreme Court of South Dakota.

Argued Oct. 20, 1999.

Decided Dec. 29, 1999.

James D. Leach of Viken, Viken, Pechota, Leach & Dewell, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Paul S. Swedlund and Mark J. Connot of Gunderson, Palmer, Goodsell & Nelson, Rapid City, South Dakota, Attorneys for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] James Bad Wound (Bad Wound) appeals a judgment against Lakota Community Homes (LCH) claiming that the trial court erred in limiting the period of his recovery of damages to the three-year term of the employment contract. LCH appealed the trial court's denial of admission of Bad Wound's past habit and routine of nonconfusion during prior management transitions. We affirm.

## FACTS

[¶ 2.] This is the second time that this case has come before this Court. Originally, we reversed the trial court's granting of summary judgment to LCH and remanded the action for trial.[1] A more detailed discussion of the facts surrounding this case is found in our prior decision. This case originated out of the termination of Bad Wound from LCH for insubordination and neglect of duties and his subsequent filing against LCH of a wrongful termination action. Following a trial, the jury returned a verdict in favor of Bad Wound for $49,983, the wages due for the remainder of Bad Wound's contract, offset by his wages earned at his new job. In deciding its damages award, the jury was not allowed to consider Bad Wound's possible future employment with LCH. Therefore, the jury's damage calculation was limited to the three-year contract term. At trial, LCH was disallowed by the court from attacking Bad Wound's credibility by presenting habit evidence of LCH's prior transitions and Bad Wound's failure to claim confusion on any of those transitions.

[¶ 3.] On appeal, Bad Wound raises the following issue:

1. Whether the trial court erred in limiting the period of Bad Wound's recovery of damages to the three-year term of the contract?

[¶ 4.] On cross-appeal, LCH raises the following issue:

2. Whether the trial court erred in excluding LCH's evidence of past habit and routine?

## DECISION

[¶ 5.] **1. Whether the trial court erred in limiting the period of Bad Wound's recovery of damages to the three-year term of the contract?**

[¶ 6.] Whether to allow the jury to consider damages beyond the contract term is an evidentiary ruling. Our standard of review of "a trial court's evidentiary ruling is that of abuse of discretion."

---

1. The first appeal by Bad Wound on the granting of LCH's summary judgment is found in *Bad Wound v. Lakota Community Homes, Inc.*, 1998 SD 25, 576 N.W.2d 229.

We reversed, based upon a finding that genuine issues of material fact did exist that required a jury trial to resolve.

*State v. Bailey,* 1996 SD 45, ¶ 34, 546 N.W.2d 387, 394 (citations omitted). An abuse of discretion is " 'discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " *Larson v. Kreiser's, Inc.,* 472 N.W.2d 761, 764 (S.D.1991) (quoting *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984)).

■ [¶ 7.] At trial, Bad Wound was requesting damages for his entire work life expectancy, an indeterminate period of time which would extend beyond the expiration of his current written contract term. His justification for this claim of damages was based upon alleged comments by the Board during oral contract negotiations. Bad Wound contends that prior to his signing of the three-year contract, the Board stated that if at the end of the three years an employee was doing his job then the contract can be renewed for another three years. Bad Wound interpreted these statements to have granted to him lifetime employment with LCH.

■ [¶ 8.] The issue of damages under a contract of employment is well settled. *See Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 696 (S.D.1993). This Court has noted that "[n]o person may recover a greater amount in damages for the breach of an obligation than he could have gained by full performance on both sides[.]" *Id.*(citing SDCL 21–1–5).

■ [¶ 9.] This Court has often stated that " '[i]n an action for breach of contract, the plaintiff is entitled to recover all his detriment proximately caused by the breach, not exceeding the amount he would have gained by full performance.' " *Ducheneaux v. Miller,* 488 N.W.2d 902, 915 (S.D.1992) (quoting *Regan v. Moyle Petroleum Co.,* 344 N.W.2d 695, 696 (S.D. 1984); *Big Band, Inc. v. Williams,* 87 S.D. 24, 28, 202 N.W.2d 121, 123 (1972)). The ultimate goal in awarding damages for breach of contract is to "place the injured party in the position he or she would have occupied if the contract had been performed." *Id..* (citing *Macal v. Stinson,*

468 N.W.2d 34, 36 (Iowa 1991)). *See also Mash v. Cutler,* 488 N.W.2d 642, 646 (S.D. 1992) (noting that in actions for breach of contract, "the plaintiff is entitled to recover all his deteriment proximately caused by the breach, not exceeding the amount he would have gained by full performance"); *Regan,* 344 N.W.2d at 696 (emphasizing that the plaintiff's recovery shall not exceed "the amount he would have gained by full performance").

[¶ 10.] In the present case, Bad Wound argues that Restatement (Second) of Contracts § 347 (1981) allows recovery of damages beyond the three-year contract term. The Restatement states:

Subject to the limitations stated in §§ 350–52, the injured party has a right to damages based on his expectation interest as measured by

(a) the loss in value to him of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss, caused by the breach, less

(c) any cost or other loss that he has avoided by not having to perform.

Bad Wound contends that his "incidental or consequential loss" would include his loss of earnings after June 30, 1998. Bad Wound argues that, based upon Board's gratuitous oral comments which were not incorporated into the final written contract, his employment would be for as long as he was willing to remain as their employee. Therefore, application of § 347 would allow him to recover an amount equal to the difference between his wages of $13.00 from LCH and his wages of $7.82 from his new employment for the rest of his working life.

[¶ 11.] Bad Wound cites Lex K. Larson, Unjust Dismissal § 9A.02[1], as authority for his argument that the application of Restatement (Second) of Contracts § 347 should allow him to recover damages beyond the three-year contract term. Notably, Larson mentions § 347 in the "con-

tract remedies in general section," but fails to discuss the section in the "application to employment contracts" section. Larson notes:

> Remedies for the breach of an employment contract follow the same general pattern as the remedies for the breach of any other contract: the remedies are designed to protect the expectations of the parties when they entered into the legally binding agreement. Thus, if an employee is working under a definite term contract but is dismissed before the expiration of the term, damages in the form of lost wages will be computed from the time of discharge to the end of the contract term.

*Id.* at § 9A.02[2] (citing *Raytheon Subsidiary Support Co., Inc. v. Crouch*, 548 So.2d 781 (Fla.Dist.Ct.App.1989); *Berutti v. Dierks Foods, Inc.*, 145 Ill.App.3d 931, 99 Ill.Dec. 775, 496 N.E.2d 350 (1986). *See also Ward v. American Mut. Liab. Ins. Co.*, 15 Mass.App.Ct. 98, 443 N.E.2d 1342 (1983) (awarding employees in a breach of express employment contract all wages they would have earned until the end of the contract term).

[¶ 12.] An employment case which dealt with claimed future loss of income is *Lindsey v. University of Arizona*, 157 Ariz. 48, 754 P.2d 1152 (Ariz.App.1987). In *Lindsey*, Lindsey was hired as head men's basketball coach for the University of Arizona. *Id.* at 1154. Lindsey had been orally informed that "no one would be hired for the coaching position for less than three to four years" and "it was University policy to give coaches a minimum of four years before being evaluated." *Id.* Despite the oral assertions, the only expressly written term of employment for Lindsey was provided in a letter from the president of the university specifying his employment as "effective July 1, 1982 and ending no later than June 30, 1983"; a term of employment for one year. *Id.* At the completion of the first season, Lindsey was notified that his contract would not be renewed. *Id.* at 1155. Lindsey brought suit against the University and was awarded $215,000 for deprivation of his three-year employment and $480,000 for decrease in Lindsey's future earning capacity. *Id.* at 1156. In reversing the damage award for decrease in future earning capacity, the court noted that "[d]amages for diminution in future earning power or capacity are not recoverable in an action for breach of an employment contract." *Id.* at 1158. In addition, it is " 'well settled that the only damages which may be recovered by an employee who has been wrongfully discharged is the balance of the salary due under the employment contract less any sums the employee was able to earn during the remainder of the contract period.' " *Id.* (quoting *Perry v. Apache Junction Elementary Sch. Dist. No. 43*, 20 Ariz.App. 561, 514 P.2d 514, 516 (Ariz.App.1973)). The court in *Lindsey* noted that damages for decrease in future earning capacity was too speculative. *Id.*

[¶ 13.] Bad Wound's reliance on Restatement (Second) of Contracts § 347 is in essence a request for recovery of tort damages in this contract action. The trial court properly instructed the jury based upon the settled law of this state for determination of contract damages.

### [¶ 14.] 2. Whether the trial court erred in excluding LCH's evidence of past habit and routine?

■ [¶ 15.] This issue, raised by LCH, is also an appeal of an evidentiary ruling. Therefore, we apply the same standard of review as applied in issue one. LCH proposed to offer evidence at trial that on eight prior managerial transitions during Bad Wound's seventeen years of employment with LCH, he never claimed confusion as to who was in charge. Specifically, three years prior to the time period at issue, CKJ was terminated for the first time and Bad Wound, unlike the present situation, reported to work the next day without claiming any confusion. LCH contends that these prior situations of nonconfusion constitute habit evidence that

should have been admitted for the purpose of attacking the credibility and truthfulness of Bad Wound's current claim of confusion.

[¶ 16.] Prior to trial, Bad Wound filed a motion in limine for the exclusion of the alleged habit evidence. Bad Wound argued that "such evidence is remote in time, raises numerous collateral issues, and does not relate to Bad Wound's situation on November 7 and 8, 1995. In none of those prior situations did any employee have a contract like Bad Wound's contract." In the motion in limine hearing, the following discussion occurred between the parties and the court:

> Mr. Leach: My motion is, we shouldn't be talking about prior management changeovers that happened two years ago, five years ago, ten years ago, which is what all these things are. We should be talking about this management changeover. Period. If we open it up and talk about two years, five years, ten years, then we are really opening up everything.

> Mr. Connot: I don't think so. If he wants to rely on the fact that he worked there for over 17 years – by his own testimony, Jim Bad Wound was there through eight previous management change-overs. In fact, previous termination in 1992 of CKJ, when CKJ was fired once before, after every one of those times, there was absolutely no confusion about who he worked for. He showed up for work for [LCH] the next morning. I think that's entirely relevant as to whether or not he was confused during November 6th and November 9th, 1995.

> The Court: Just a little while ago you were telling me, the other side of the argument is that he had only been in this supervising position for three months.

> Mr. Connot: The supervisory position, but he had been an employee there for 17 years.

> The Court: Well, just an employee is a little different than being a supervisor. That was the argument you were making, and I agree with that argument, that it is. Consequently, if prior management changes, I don't think they are relevant.

> Mr. Connot: Even CKJs termination in 1992? He's testified they were fired in 1992, and he showed up the next day.

> Mr. Leach: That is three years before. It's a different deal; he doesn't have a contract then.

> The Court: I agree he doesn't have a contract

> . . . .

> The Court: [Motion in limine] is granted.

In making its ruling, the court emphasized that Bad Wound did not have a written employment contract during the prior changeovers as he did here.

[¶ 17.] Bad Wound argues that the issue was not properly preserved below for our review. We find that it was. Under SDCL 19–12–8,

> *Evidence of the habit of a person* or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, *is relevant to prove that the conduct of the person* or organization *on a particular occasion was in conformity with the habit or routine.* (Emphasis added.)

We have often noted that "[r]elevance is a precursor to admitting any evidence." *State v. White*, 538 N.W.2d 237, 242 (S.D. 1995). "Evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant." *Id.* (citing SDCL 19–12–1 (other citation omitted)). Once evidence is found

relevant, the court must then determine "whether the danger of unfair prejudice substantially outweighs the probative value of the evidence 'in view of the availability of other means of proof' and the other factors under SDCL 19–12–3 (Rule 403)." *Id.* at 243 (quoting FRE Advisory Committee Note to FRE Rule 404(b); *State v. Basker,* 468 N.W.2d 413 (S.D.1991)).

[¶ 18.] In *Kavales v. City of Berwyn,* 305 Ill.App.3d 536, 238 Ill.Dec. 738, 712 N.E.2d 842, 844 (1999), an action to recover personal injury damages from the city after the plaintiff's decedent, Diana Drost, fell in a public alley. In *Kavales,* the court noted that "[h]abit evidence of an individual . . . is admissible to prove that the conduct in question was in conformity with such habit or routine practice." *Id.* at 851 (citing *Collins v. Roseland Community Hosp.,* 219 Ill.App.3d 766, 162 Ill.Dec. 291, 579 N.E.2d 1105, 1109 (1991)). The court noted that in introducing evidence of an organization's routine practice, the " 'evidence must be sufficiently detailed and specific, and the situations involved must be similar enough to give rise to a reliable inference.' " *Id.* (quoting *Brennan v. Wisconsin Central, Ltd.,* 227 Ill.App.3d 1070, 169 Ill.Dec. 321, 591 N.E.2d 494 (1992)). "Evidence of the habit of an individual . . . describes an act that is a regular response to a repeated specific situation so that the act becomes semi-automatic and of virtually invariable regularity." *Id.* (citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 406.1 (6thEd. 1994)). The court found that the witness's testimony "was not sufficiently detailed or specific enough to establish evidence of a routine business practice." *Id.* Finally, "[w]ithout more specific information concerning the basis [for the witness's testimony], [the testimony] . . . was mere conjecture and speculative at best. *Id. See also Loughan v. Firestone Tire & Rubber Co.,* 749 F.2d 1519, 1524 (11thCir.1985) (holding that examples alleged to constitute habit are only admissible "when [the] examples offered to establish such pattern of conduct or habit

are 'numerous enough to base an inference of systematic conduct' ").

[¶ 19.] LCH relies on our discussion in *Larson* in which we held that evidence of an employee's conversion of corporate funds (checks) was relevant to his credibility and probative of his truthfulness and should have been before the jury. 472 N.W.2d at 764. LCH contends that because truthfulness and credibility are issues in this case, our decision in *Larson* should apply. We find that LCH's reliance on *Larson* is misplaced. The issue before us in *Larson* was whether the admission of specific instances of conduct by a witness were admissible for the purpose of attacking or supporting his credibility under SDCL 19–14–10. Presently, we are faced with whether certain situations which occurred over a span of a seventeen-year employment reoccurred often enough and contained enough uniformity and similarity as to constitute evidence of a pattern of conduct or habit under SDCL 19–12–8.

█ [¶ 20.] The trial court found that the prior managerial changes and terminations were not sufficiently similar to establish a pattern of conduct or habit. This decision was based upon Bad Wound's employment status not being similar to his status at the time of the current managerial change, Bad Wound did not have a written contract during the prior managerial transitions, and there was a different LCH Board involved in all the instances. If evidence is not relevant to the causes of action alleged, it is not admissible. *See Darrow v. Schumacher,* 495 N.W.2d 511, 521 (S.D.1993). In Edward J. Imwinkelried, Evidentiary Foundations 155, the author notes in his discussion of habit evidence that "if the behavioral pattern is specific enough and the instances numerous enough, the judge allows the jury to infer the existence of the habit." *See also* Advisory Committee Notes, Rule 406, Fed. R.Evid. ¶ 2 (stating that habit "describes one's regular response to a *repeated specific situation* ") (emphasis added). To constitute a habit, the evidence must be

sufficiently similar to constitute a "repeated specific situation" and rise to a level of habitual behavior. In reviewing the record, the evidence fails to show that the prior managerial changes were "sufficiently similar" to the present situation so as to "rise to a level of habitual behavior." Based upon the inadequate showing on this issue, the trial court did not abuse its discretion in excluding this evidence.

[¶ 21.] We affirm.

[¶ 22.] MILLER, Chief Justice, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 23.] SABERS, Justice, concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 24.] The trial court erred in preventing LCH "from attacking Bad Wound's credibility [and truthfulness] by presenting habit evidence of LCH's prior transitions and Bad Wound's failure to claim confusion on any of those transitions."

[¶ 25.] LCH offered evidence "that on eight prior managerial transitions during Bad Wound's 17 years of employment with LCH, he never claimed confusion as to who was in charge." In fact, only three years before, CKJ was fired for the first time and Bad Wound reported to work the next day without claiming any confusion.

[¶ 26.] Clearly, this evidence is relevant to establish that Bad Wound was not truly "confused" about whom he worked for on November 7 and 8, 1995. Relevant evidence is defined as:

> [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

SDCL 19–12–1 (Rule 401). The determination of relevancy hinges on whether the evidence possesses sufficient probative value to justify receiving it into evidence. In other words, does the admission of Bad Wound's lack of confusion during eight prior management transitions have a tendency to prove that Bad Wound was not confused in this instance more probable than it would be without the evidence? The answer is clearly "yes." The ascertainment of whether Bad Wound was actually confused in this instance is indisputably the ultimate issue in this case and applies to Bad Wound's intent and knowledge. The probative value of the habit evidence is not substantially outweighed by its prejudicial effect. If Bad Wound was not confused in the prior 17 years, was he really confused in this instance? The answer is for a jury to determine.

[¶ 27.] It was an abuse of discretion to determine that the evidence of the eight prior managerial transitions LCH endured while Bad Wound was an employee, was inadmissible and did not rise to the level of habit evidence. Habit evidence is defined as:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

SDCL 19–12–8 (Rule 406). Although the rule does not define "habit," the Advisory Committee Note to Federal Rule of Evidence 406 quotes Professor McCormick's description of habitual behavior as "consisting of semi-automatic, almost involuntary and invariabl[y] specific responses to fairly specific stimuli." "What Rule 406 seeks to admit are those kinds of repetitive acts that provide strong proof of conduct on a specified occasion without the danger of bogging down the trial in collateral issues or unfairly prejudicing the case of one of the parties." 23 Wright and Graham, Federal Practice and Procedure § 5273.[2]

---

**2.** This treatise additionally provides: "One of

the reasons the courts have been reluctant to

"Although there are no 'precise standards' for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: 'adequacy of sampling and uniformity of response.'" *United States v. Newman,* 982 F.2d 665, 668 (1stCir.1992), *cert. denied,* 510 U.S. 812, 114 S.Ct. 59, 126 L.Ed.2d 28 (1993) (citations omitted).

[¶ 28.] Courts are divided as to how many prior instances of identical behavior must be shown in order to demonstrate a habit. *See* John P. Ludington, Annotation, *Habit or Routine Practice Evidence Under Uniform Evidence Rule 406,* 64 A.L.R.4th 567, 598–601 (1988). Rule 406 does not specify a minimum number of specific instances of conduct to establish a habit. In fact, the Advisory Committee's Note to Federal Rule of Evidence 406 cites approvingly *Whittemore v. Lockheed Aircraft Corp.,* 65 Cal.App.2d 737, 151 P.2d 670 (1944), a· case in which evidence that a decedent had, on four prior occasions, piloted planes from defendant's factory to decedent's place of employment was admitted to prove that he probably piloted a plane that crashed, killing everyone on board. It is probably not possible, nor is it proper, to prescribe a precise number because much depends on the nature of the behavior in question.

[¶ 29.] In *Chomicki v. Wittekind,* 128 Wis.2d 188, 381 N.W.2d 561, 564–65 (Wis. Ct.App.1985), the Wisconsin Court of Appeals held that four incidents of conduct over a two-year period were properly admitted as habit evidence: "[t]he key issue is not how many incidents are testified to, but how relevant and probative are they to the case at bar." Another court has also pointed out: "[t]he sheer number of prior instances of particular conduct is an important factor in establishing a habit, but perhaps even more important is evidence from which an inference of consistency and invariability can be drawn." *State v. Kelekolio,* 74 Haw. 479, 849 P.2d 58, 67 n.9 (Haw.

1993) (quoting A. Bowman, Hawaii Rules of Evidence Manual § 406–2, at 122–24 (1990) & at 8–10 (Supp. 1992) (other citations omitted)). The determinative part of this equation is not frequency, in and of itself, but consistency and regularity. ,

[¶ 30.] There were nine managerial transitions throughout Bad Wound's employment with LCH. During the first eight transitions, Bad Wound consistently reported to work on a regular basis. In fact, three years before this incident, CKJ was fired for the first time and Bad Wound did not even hesitate to report for work the next day. For 17 years, there appeared to be no question of whom he worked for. All eight of these prior managerial transitions are unquestionably similar to the managerial transition that took place in November of 1995; however, Bad Wound alleges to be confused on this ninth transition.

[¶ 31.] As a general rule, evidence of habitual behavior is admissible as circumstantial proof that the habit was followed on the occasion in question. The evidence that Bad Wound was not confused about who his employer was during the previous eight managerial transitions would be offered to prove that Bad Wound was not confused during the ninth transition. The evidence is sufficient to establish that Bad Wound's response to management transitions was a "semi-automatic, almost involuntary and invariabl[y] specific responses to fairly specific stimuli." Therefore, it is relevant and admissible as habit evidence under Rule 406.

[¶ 32.] The trial court granted the Bad Wound's motion in limine because Bad Wound did not have an employment contract with LCH during the prior transitions, but did have a contract during the transition on November 7 and 8 of 1995. The fact that Bad Wound had an employment contract in this instance is immaterial to the point that Bad Wound, who never had an employment contract in the preced-

admit evidence that a person is a "habitual drunk" or has a habit of reckless driving is that such evidence may be more prejudicial

than probative with respect to the issues in the case."

ing 17 years, never before contested that he worked for LCH. The trial court abused its discretion in granting the motion in limine and taking the ultimate issue in this case from the jury.

Where the evidence is entirely circumstantial[,] a party should not be deprived of competent, relevant evidence because it is not of great strength. Many threads may make a rope.

*Whittemore,* 151 P.2d at 678.

[¶ 33.] As indicated, Bad Wound's credibility was the ultimate issue [3] in this case

and the trial court clearly erred in denying the jury the evidence to properly decide it.

[¶ 34.] I vote to reverse and remand for a new trial.

---

**3.** The irony of this case is that it has been to the South Dakota Supreme Court twice without the real issue ever having been decided by a jury. In *Bad Wound I,* the trial court was so impressed in LCH's favor it granted LCH summary judgment based on the same evidence it excluded from the jury in *Bad Wound II.* The jury should decide this case on all the evidence instead of the trial court or this court deciding it on part of the evidence.